COMMONWEALTH vs. ANTHONY JOHNSON.

Hampden. March 4, 2009. - June 26, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Protective frisk. *Constitutional Law,* Stop and frisk.

A trial court judge erred in granting a criminal defendant's motion to suppress evidence of controlled substances found after police officers conducted a patfrisk of the defendant, where the police officers had legitimately approached the defendant and his companions as they stood in a residential area (given that one member of the group was committing a trespass), and where there was a reasonable and sufficiently specific basis for one officer to suspect that his safety or the safety of the public was at risk, in view of the nature of that particular area (a well-known high crime neighborhood) and the defendant's specific action of disregarding that officer's direction to take his hands out of his pockets. [161-164]

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on August 30, 2006.

A pretrial motion to suppress evidence was heard by *William W. Teahan, Jr.,* J.

An application for an interlocutory appeal was allowed by *Spina,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Rose E. King* for the defendant.

*Sidney E. Reavey,* Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. The defendant, Anthony Johnson, was charged in a three-count complaint with possession of "crack" cocaine with intent to distribute in violation of G. L. c. 94C, § 32A (*a*); possession of a class B substance, two "percot pills," in violation of G. L. c. 94C, § 34; and a school zone violation, G. L. c. 94C, § 32J. He moved to suppress the evidence of controlled

substances, arguing that the police officers conducted an impermissible patfrisk of him in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. A judge in the District Court allowed the motion after an evidentiary hearing. In an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court reversed. *Commonwealth* v. *Johnson*, 71 Mass. App. Ct. 1124 (2008). We granted the defendant's application for further appellate review, and, like the Appeals Court, we reverse the order allowing the defendant's motion to suppress.

1. *Background.* We set out the facts as found by the motion judge.[1]

> "On August 29, 2006 Springfield police officers Edward Van Zandt ('Van Zandt') and Justin Walter ('Walter') were on uniform patrol assigned to the street crimes unit of the department targeting high crime areas of the city. At about 11:54 a.m. they were patrolling the vicinity of Bay and Girard Streets. They knew the area as a high crime neighborhood replete with drug dealings, gangs, gun violence and property crimes. Each had made multiple arrests in the area and they would patrol the location daily approaching people gathered together to check identities and for warrants. As they approached the vicinity of 21 Girard Street, a multiple apartment residential area, they noticed approximately 6 young people standing under a tree. All but one were males. One was known to both officers as having received a trespass for the location.[2] Both officers left the cruiser approaching the group. No siren or cruiser lights were used. No guns were drawn. The man with the trespass notice was arrested. The defendant separately was approached by Officer Walter who had seen him digging into the front pockets of his sweatshirt and jeans as if looking for something. He was told to remove his hands from his pockets. He briefly complied and then again began

---

[1]Two police officers, called by the Commonwealth, testified at the motion to suppress hearing. There were no other witnesses.

[2]Neither the judge nor the parties on appeal has defined or explained the phrase "received a trespass," but we understand it to mean that the person in question has been ordered — presumably by the property owner or one in control of the property — not to enter particular property, and informed that if the person does so, he or she will be subject to arrest for criminal trespassing.

Commonwealth *v.* Johnson.

putting his hands into his pockets.[3] Walter approached
him and patted down the defendant feeling an object in a
pocket which he felt could be the but[t] of a gun or other
weapon. Retrieved, it was a round glass jar, with a red
plastic top. Looking through the glass, Walter recognized
what he believed to be packages of crack cocaine. Neither
officer knew the defendant. Other than the arrest of a
member of the group for trespass no other actions of
significance were observed of the group including the
defendant."

The judge then determined that in the circumstances, where
the police approached the six young people on a routine check
for identification against warrants, in daylight, in the absence of
any threatening behavior, and without any knowledge of the
individuals except the trespasser, "[t]here [was] an objective
ambiguity in what the defendant's hand movements represented.
Such movements may be representing a danger to the police in
seeking a weapon or they may be for a variety of legitimate pur-
poses." He concluded that no "reasonable suspicion existed to
pat-frisk on these facts," and that the defendant's motion to sup-
press should be allowed.

2. *Analysis.* "In reviewing a ruling on a motion to suppress
evidence, we accept the judge's subsidiary findings of fact absent
clear error and leave to the judge the responsibility of determin-
ing the weight and credibility to be given oral testimony presented

---

[3]Officer Justin Walter testified to this point more than once. He stated: "He
was standing there and he was digging — you know, he had his hands in his
pockets. And he was digging around from sweatshirt to jean pocket like he
was looking for something or maybe trying to hide something. Due to the
area, knowing, you know, that some guys carry weapons in that area, I asked
him to, 'Take your hands out of your pocket.' He briefly took them out, went
to reach again. And that's when I gained control of him." A little later he
testified, "I mean, he [the defendant] was feeling into his front hooded sweat-
shirt pocket, his front jeans pocket, rear pocket. He just kept moving. Real
fidgety. Kept moving around. . . . When he first began, I asked him to keep
his hands out of his pockets, you know. We don't know if there's weapons in
the pockets, if there's drugs he's trying to hide, whatever. He briefly took his
hand out of the pocket, went back to reach in his right front pocket. That's
when I gained control of him." Somewhat later, Walter stated that he believed
he had asked the defendant "twice, maybe three times" to take his hands out
of his pockets. We infer from his findings that the judge did not credit the of-
ficer's last statement ("twice, maybe three times"), and we do not consider it.

at the motion hearing. . . . We review independently the application of constitutional principles to the facts found." (Citations omitted.) *Commonwealth* v. *Wilson*, 441 Mass. 390, 393 (2004).

The sole issue presented in this case is whether the patfrisk of the defendant was constitutionally permissible.[4] "A patfrisk is constitutionally justified when an officer reasonably fears for his own safety or the safety of the public . . . or when the police officer reasonably believes that the individual is armed and dangerous" (citations omitted). *Commonwealth* v. *Isaiah I.*, 450 Mass. 818, 824 (2008). For an officer's fear or belief to be "reasonable," it must be based on specific, articulable facts, and inferences fairly permitted by those facts. *Commonwealth* v. *Wilson, supra* at 394.

Two questions arise in connection with a determination whether a police officer had a sufficient, reasonable basis to conduct a patfrisk: (1) was the officer rightfully in the presence of the party who was ultimately frisked; and (2) did the officer have a reasonable basis to suspect that this party was likely to be armed and dangerous. See 4 W.R. LaFave, Search and Seizure § 9.6(a), at 615 (4th ed. 2004).

Here, the officers were legitimately in the presence of the group that included the defendant because the two officers knew that one of the young men standing in the group was committing a trespass by being at that location, and the officers were clearly authorized to approach the group and arrest him.[5] Cf. *Commonwealth* v. *Knowles*, 451 Mass. 91, 99 (2008) (officer had basis to approach defendant to follow up and inquire further on report of man swinging bat on street even though location not

---

[4] There is no question that the patfrisk of the defendant that Officer Walter initiated and conducted constituted a seizure of the defendant's person, and thereby implicated the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. See, e.g., *Terry* v. *Ohio*, 392 U.S. 1, 16-17 (1968); *Commonwealth* v. *Fraser*, 410 Mass. 541, 544 (1991). The defendant challenges the constitutionality of the patfrisk, but does not argue — correctly, in our view — that he was seized at any point before that frisk. See *id.* (police officer's request that defendant remove his hands from pockets, without more, did not convert encounter into seizure). See also *Commonwealth* v. *DePeiza*, 449 Mass. 367, 370-371 (2007).

[5] We do not reach the question whether the officers would have been justified in conducting a patfrisk of the defendant or any member of his group for the officers' protection if the sole reason they had approached and were in the group's presence was in connection with a routine effort to check identifications.

high crime area, there was no report of violence, and it was not dark).

The second question — was there a reasonable and sufficiently specific basis for Officer Walter to suspect that his safety or the safety of the public was at risk or that the defendant was armed and dangerous — is more difficult. On the one hand, as the motion judge determined and in contrast with many of our patfrisk cases, the encounter at issue here occurred in broad daylight, not at night; there were no recent reports of criminal activity in the vicinity to which the police were responding; and the group of young people were not collectively engaged in any suspicious or potentially threatening conduct. Cf., e.g., *Commonwealth* v. *Fraser*, 410 Mass. 541, 542-547 (1991). See generally *Commonwealth* v. *Knowles*, 451 Mass. at 97-99, and cases cited. On the other hand, Officer Walter, who conducted the frisk, indicated that in view of the particular area — as the judge described it, "a high crime neighborhood replete with drug dealings, gangs, gun violence and property crimes" — the defendant's specific action of disregarding the direction to take his hands out of his pockets gave the officer a concern for his and the other police officer's safety.

The fact that the officers were in a high crime area is unquestionably a factor to consider, albeit with caution; we recognize that so-called high crime areas are inhabited and frequented by many law-abiding citizens who are entitled to be protected against being stopped and frisked just because of the neighborhood where they live, work, or visit. See, e.g., *Commonwealth* v. *Holley*, 52 Mass. App. Ct. 659. 663 (2001). The term "high crime area" is itself a general and conclusory term that should not be used to justify a stop or a frisk, or both, without requiring the articulation of specific facts demonstrating the reasonableness of the intrusion. See *Commonwealth* v. *Gomes*, 453 Mass. 506, 513 (2009). Here, however, the undisputed testimony of the two police officers was that the particular area of Springfield where the patfrisk occurred was, at the time of the frisk, "well known as a high gang area" with gun violence, citizen calls for shots fired, and heavy drug dealing. See *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41, 42-43 (2002).

The judge found the defendant's hand movements to present

an "objective ambiguity." The officer, on the scene, was not required to accept the risk of that ambiguity. The officer's command to the defendant to take his hands out of his pockets presumably was intended to avoid the need for any frisk; when the defendant disregarded the directive, from the officer's perspective, the need arose. "Strange, furtive, or suspicious behavior or movements can infuse otherwise innocent activity with an incriminating aspect." *Commonwealth* v. *Pagan*, 63 Mass. App. Ct. 780, 782-783 (2005). See *Commonwealth* v. *Johnson*, 413 Mass. 598, 601 (1992); *Commonwealth* v. *Fraser*, 410 Mass. at 542-543 & n.2, 546; *Commonwealth* v. *Va Meng Joe*, 40 Mass. App. Ct. 499, 509-511 (1996), *S.C.*, 425 Mass. 99, 105-106 (1997). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* v. *Ohio*, 392 U.S. at 27. See *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974).

3. *Conclusion.* The order allowing the motion to suppress the evidence is reversed. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*