NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12239


COMMONWEALTH  vs.  JONATHAN VILLAGRAN.



Norfolk.      March 7, 2017. - August 29, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.[1]


Firearms.  Controlled Substances.  Disturbing the Peace.
     Constitutional Law, Search and seizure, Reasonable
     suspicion, Probable cause.  Search and Seizure, Reasonable
     suspicion, Protective frisk, Probable cause.  Probable
     Cause.




     Complaint received and sworn to in the Quincy Division of
the District Court Department on March 26, 2015.

     A pretrial motion to suppress evidence was heard by Diane
E. Moriarty, J., and the cases were tried before Robert P.
Ziemian, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Mathew B. Zindroski for the defendant.
     Laura A. McLaughlin, Assistant District Attorney (David M.
Ringius, Assistant District Attorney, also present), for the
Commonwealth.



-----

     [1] Justice Hines participated in the deliberation on this
case and authored this opinion prior to her retirement.

HINES, J. After a jury trial in the Quincy District Court, the defendant, Jonathan Villagran, was convicted of carrying a firearm without a license, G. L. c. 269, § 10 (a); carrying a dangerous weapon on school grounds, G. L. c. 269, § 10 (j); possession of a firearm without a firearm identification card, G. L. c. 269, § 10 (h); disturbing a school, G. L. c. 272, § 40; and possession of a class D substance with intent to distribute, G. L. c. 94C, 32C.[2] The complaint issued after a police officer, responding to a report of an unauthorized person on the property of Milton High School (school), searched the defendant's backpack and discovered a firearm, money, and marijuana.

Prior to trial, the defendant filed a motion to suppress statements and physical evidence seized during the search of his backpack, arguing that the police officer lacked a constitutionally permissible basis for the patfrisk and the subsequent search. A judge of the District Court denied the motion. The defendant appealed, asserting that the denial of the motion to suppress violated his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.[3] He also challenges the

---

[2] The trial judge allowed the defendant's motion for a required finding of not guilty on a charge of minor in possession of alcohol, G. L. c. 138, § 34C.

[3] The defendant does not challenge the denial of the motion to suppress statements.

sufficiency of evidence to support the conviction of disturbing a school.

We transferred the case to this court on our own motion and take this opportunity to reaffirm the distinction between the traditional standard applicable to a police officer's conduct implicating the Fourth Amendment and the less stringent standard applicable to a school official who does the same. When a police officer conducts a patfrisk, the applicable standard for assessing its constitutionality is reasonable articulable suspicion, Terry v. Ohio, 392 U.S. 1, 27 (1968), and when a police officer conducts a search, the Fourth Amendment requires a warrant based on probable cause unless the search is justified by probable cause and an exception to the warrant requirement. Commonwealth v. Tyree, 455 Mass. 676, 684 (2010). Although the question has not been presented directly, we previously have assumed that a police officer's conduct in a school setting is governed by the traditional Fourth Amendment standard. Commonwealth v. Carey, 407 Mass. 528, 535 n.4 (1990) (discussing distinction between standard applicable to police officers and school officials). On the other hand, when a school official conducts a search, it is constitutionally permissible under the Fourth Amendment and art. 14 so long as it is "reasonable[] under all the circumstances." New Jersey v. T.L.O., 469 U.S. 325, 341 (1985) (T.L.O.).

Applying the Terry standard to this case, we conclude that the police officer lacked reasonable articulable suspicion that the defendant had committed a crime and that the circumstances of the encounter with the defendant did not warrant a reasonable belief that the defendant was armed and dangerous to the officer or others. Nor was the search permissible under any exception to the warrant requirement. Thus, because neither the patfrisk nor the search of the defendant's backpack was justified on any of these grounds, the denial of the motion to suppress was error. Therefore, we vacate his convictions of the firearms and drug charges. Because the conviction of disturbing a school was based, at least in part, on his possession of a firearm, which should have been suppressed, we vacate that conviction and remand for a new trial.

Discussion. 1. Motion to suppress. a. Standard of review. "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing." Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004). "A finding is clearly erroneous if it is not supported by the evidence, or when the reviewing court, on the entire evidence, is left with the firm

conviction that a mistake has been committed." Commonwealth v.

Hilton, 450 Mass. 173, 178 (2007). "We review independently the

application of constitutional principles to the facts found."

Commonwealth v. Amado, 474 Mass. 147, 151 (2016), quoting

Wilson, supra.

b. Facts. In the written order denying the defendant's

motion to suppress, the judge found the following facts based on

the testimony of two Milton police officers, Sergeant Kristen

Murphy and a detective.[4]

> "On March 25, 2015, at approximately 2:00 P.M.,
> [school] officials observed an unknown individual on the
> grounds of the school. Later identified as [the
> defendant], he entered the facility and told school
> officials that he was a student and needed to get back into
> the building. He eventually changed his story stating that
> he needed to use the restroom, after presenting an
> obviously fictitious name to the school official. The
> [d]efendant then exited the building, but could be seen
> pacing around the school parking lot.

> "At this time, the principal and vice principal
> approached the [d]efendant and noticed a strong smell of
> marijuana. The [d]efendant proceeded to tell them that he
> was waiting for a [sixteen] year old girl to meet him at
> the school. At this point the principal and vice principal
> worried about the surrounding students filling the area and
> ushered the [d]efendant into a conference room in the
> school.

> "Sergeant [Murphy] of the Milton Police Department
> arrived and smelled an overpowering scent of marijuana on
> the defendant. Sergeant [Murphy] was informed that the
> [d]efendant had lied about his identity and his reason for
> being there, and that the [d]efendant tried to sneak into

---

[4] None of the school officials who interacted with the
defendant on March 25, 2015, testified at the hearing on the
motion to suppress.

the school.  Both school and law officials were suspicious of the [d]efendant's strange demeanor as well as his blatant lying and reasonably agreed that he may have contraband on him.  Sergeant [Murphy] then conducted a pat-frisk on the [d]efendant and found marijuana in his sweatshirt, in addition to a wad of money in the amount of $2,964.88 in his pants pocket.  After searching the [d]efendant's person Sergeant [Murphy] pat-frisked the exterior of the backpack, despite the defendant's objections, and felt a hard object.  Sergeant [Murphy] then opened the bag, as she feared the hard object may be a weapon.  In the bag Sergeant [Murphy] discovered a bottle of alcohol, another bag of marijuana, a scale, and a loaded handgun.  [Murphy] immediately removed the gun from the [d]efendant's reach and read him his Miranda rights.  The school was then placed on lockdown. . . ."

The defendant contends, and the Commonwealth concedes, that portions of these findings, central to the judge's ruling denying the motion to suppress, were not supported by the evidence and, thus, are clearly erroneous.[5]  See Hilton, 450 Mass. at 178-180.  Specifically, the evidence does not support the judge's findings that:

(1) At the time of the frisk, Murphy knew the defendant "entered the facility and told school officials that he was a student and needed to get back into the building.  He eventually changed his story stating that he needed to use the restroom, after presenting an obviously fictitious name to the school official.  The [d]efendant exited the building but could be seen pacing around the school parking lot."

(2) "Sergeant [Murphy] was informed that the [d]efendant had lied about his identity and his reason for being there, and that the [d]efendant tried to sneak into the school."

---

[5] The Commonwealth conceded at oral argument and in its brief that the judge's findings regarding what Sergeant Murphy knew when she initiated the frisk lacked support in the evidence.

(3) The sergeant was "suspicious of the [d]efendant's strange demeanor as well as his blatant lying and reasonably agreed that he may have contraband on him."

(4) "Sergeant [Murphy] then opened the bag, as she feared the hard object may be a weapon."

Instead, Murphy described in unequivocal terms the extent of her knowledge of the events that occurred prior to her entry into the conference room where the defendant had been brought by school officials. "The call was given out that . . . a male party was trying to gain entry into the high school. That's what I knew. When I got there [the vice-principal] told me we have a kid in the conference room, he's not a student here. Basically, that's what I knew."

In addition to the findings that survive the clear error standard, the evidence at the motion to suppress hearing also established the following. On her arrival, Murphy observed that the vice-principal, whom she had known for over twenty years, was "excited" and that both the vice-principal and the principal appeared to be "rattled." Once inside the building, the sergeant and the vice-principal proceeded to the conference room where the principal was waiting with the defendant, who was seated at a table. The principal told Murphy, "Something's wrong. Something's not right with this kid. Something's not right. He has something on him. I know he has something on him." The principal did not, however, explain the basis for his

"hunch" that the defendant had contraband in his possession or express a concern that the contraband might be a firearm. Murphy did not inquire further to determine the basis of the principal's suspicion that the defendant "had something on him." Nor was Murphy told of the defendant's interactions with school officials or the substance of his lies to gain entry into the school[6] before she commenced the patfrisk that culminated in the search of the backpack.

c. Analysis. The judge concluded that Murphy conducted a lawful patfrisk of the defendant's person and his backpack based on Murphy's "reasonable apprehension of fear, danger and unknown factors present during the period of [the d]efendant's interaction with the school and law officials" and, therefore, all of the evidence seized from the defendant was admissible. In reaching this conclusion, the judge expressly relied on the finding that Murphy was aware of the defendant's "blatant lies" to gain entry into the school. We consider the constitutionality of the patfrisk and the search of the backpack, omitting the clearly erroneous findings related to Murphy's knowledge of the circumstances of the defendant's entry into the school but taking cognizance of those facts supported

---

[6] Murphy learned that the defendant had lied to school officials but she became aware of that fact only after she had initiated the patfrisk during which the defendant admitted, without specificity, that he had lied.

by the evidence and supplemented by uncontroverted evidence that was implicitly credited by the judge. Commonwealth v. Melo, 472 Mass. 278, 286 (2015).

Although the police conduct at issue here occurred in a public school, the less stringent standard of T.L.O., 469 U.S. at 341 -- "reasonableness[] under all the circumstances" -- does not apply. In T.L.O., the United States Supreme Court emphasized that its holding applied only to "searches carried out by school authorities acting alone and on their own authority" and not to searches carried out by police officers or school officials acting in conjunction with police officers. Id. at 341 n.7. The less stringent standard for the school setting was necessary to accommodate both "the privacy interests of schoolchildren [and] the substantial need of teachers and administrators for freedom to maintain order in the schools." Id. at 341. However, when a police officer rather than a school official engages in conduct that implicates the Fourth Amendment and art. 14, we apply the traditional standard as articulated in Terry and followed by our cases. Thus, the patfrisk at issue here must be justified by reasonable and articulable suspicion that the defendant was engaged in criminal activity and that the defendant was armed and dangerous. Commonwealth v. Narcisse, 457 Mass. 1, 9 (2010). The subsequent search of the defendant's backpack must be justified by probable cause and an exception to

the warrant requirement.  See Commonwealth v. Cast, 407 Mass. 891, 901 (1990).

i.  The frisk.  Because the "stop" in this case was conducted by school officials, we need not address the propriety of the stop.  Rather, our inquiry is whether the frisk was justified by a reasonable suspicion that the defendant was engaged in criminal activity and that he was armed and dangerous.  Narcisse, 457 Mass. at 9.  Whether the facts as found by the judge established reasonable articulable suspicion that the defendant was committing a crime presents a close question, but we are persuaded they do not.

We acknowledge that the defendant, a nonstudent, was on school property surrounded by school officials who believed he possessed contraband of some sort.  When Murphy arrived, however, she knew only that school officials had a male nonstudent detained in the conference room and that the police had been called for assistance in the matter.  See Commonwealth v. Mendez, 476 Mass. 512, 515 (2017).  The principal voiced his strong suspicions of the defendant, but neither he nor the vice-principal reported any conduct suggestive of criminal activity. The odor of marijuana, which Murphy appreciated upon her entry into the conference room, also was not sufficient to support reasonable suspicion of criminal activity.  See Commonwealth v. Rodriguez, 472 Mass. 767, 775 (2015) ("[W]here the only factor

leading an officer to conclude that an individual possesses marijuana is the smell of . . . marijuana, this factor supports a reasonable suspicion that that individual is committing the civil offense of possession of a small quantity of marijuana"). See also Commonwealth v. Meneide, 89 Mass. App. Ct. 448, 451 n.4 (2016) (smell of burnt or unburnt marijuana insufficient basis for either reasonable suspicion or probable cause).

What is left then is the defendant's mere presence, a possible criminal trespass in violation of G. L. c. 266, § 120. However, reasonable suspicion of a criminal trespass did not arise where none of the information available to Murphy suggested that the defendant "remain[ed] in or upon the building . . . of another . . . after having been forbidden so to do by the person in lawful control of said premises." Id. Murphy was not told that the defendant had been asked to leave the premises.[7] For these reasons, we discern no basis for reasonable articulable suspicion of criminal activity.

Even if the defendant's conduct led to a reasonable suspicion of criminal activity, the frisk was not justified. When Murphy pat frisked the defendant, she had no information from school officials to suggest that the defendant was armed.

---

[7] The evidence at trial, which revealed that the defendant had attempted to leave but was detained by school officials to await the arrival of the police, explains the unlikely inference of a criminal trespass at the time of the encounter in the school's conference room.

The principal's unsubstantiated hunch that the defendant "had something on him," alone, was insufficient for a reasonable belief that the defendant was armed and dangerous, especially where the principal had invited the defendant to return to the school, the defendant had already emptied his pockets at the principal's direction, and the reasonable inference was that the principal believed that the defendant had marijuana or some other controlled substance on his person based on the strong odor of marijuana present in the room. See Wilson, 441 Mass. at 394. See also Commonwealth v. Martin, 91 Mass. App. Ct. 733, 740-741 (2017) (possession of marijuana, without more, insufficient for reasonable suspicion that defendant was armed).

Moreover, the principal's hunch combined with Murphy's observations of the defendant's nervousness and Murphy's testimony that both the principal and the vice-principal appeared to be "rattled" still did not establish a reasonable belief that the defendant was armed and dangerous where the defendant was compliant and did not make any furtive gestures or reach into his pockets in a manner that would suggest that he was carrying a weapon. See Commonwealth v. Brown, 75 Mass. App. Ct. 528, 534 (2009) ("nervous or anxious behavior in combination with factors that add nothing to the equation will not support a reasonable suspicion that an officer's safety may be compromised"). Also, Murphy's testimony is devoid of any

reference to her suspicion that the defendant was armed or her fear for her safety or for the safety of the school. Therefore, nothing in the record of the hearing on the motion to suppress established the specific and articulable facts required to show that Murphy's patfrisk was the result of her reasonable belief that the defendant was armed and dangerous. See DePeiza, 449 Mass. 367, 374 (2007), citing Wilson, 441 Mass. at 394.

ii. The search of the backpack. As is well established, the search of the backpack must be justified by probable cause and an exception to the warrant requirement. See Tyree, 455 Mass. at 684. The Commonwealth failed to meet its burden to justify the search of the backpack on this basis.

First, the facts fall far short of the showing necessary for probable cause. Because the patfrisk was not justified, Murphy's observation that a "hard object" was present in the backpack cannot be considered in the probable cause analysis. Nor was the presence of a "hard object" sufficient to establish that it was a firearm. Cf. Commonwealth v. Flemming, 76 Mass. App. Ct. 632, 638 (2010) (search under defendant's clothing unreasonable where there was no evidence that hard object felt like weapon). Second, a search incident to a lawful arrest, the only plausible exception that fits the circumstances of this

case,[8] does not apply. Under our law, Murphy could have searched the backpack for the "fruits, instrumentalities, contraband and other evidence of the crime . . . and remov[ed] any weapons that the arrestee might use to resist arrest or effect his escape." G. L. c. 276. § 1. See Commonwealth v. Madera, 402 Mass. 156, 160 (1988) (search incident to arrest under art. 14 permissible to retrieve weapon or evidence of crime). This exception fails, however, because as discussed above, there was no crime for which the defendant lawfully could have been arrested.

The dissent rejects the bedrock constitutional principles that a patfrisk of a suspect must be justified by reasonable articulable suspicion of both criminal activity and dangerousness and that a warrantless search must be justified by probable cause and an exception to the warrant requirement as dictated by Terry and its progeny. Terry, 329 U.S. at 20. See, e.g., Narcisse, 457 Mass. at 6-7; Commonwealth v. Catanzaro, 441 Mass. 46, 71 (2004); Commonwealth v. Torres, 433 Mass. 669, 672 (2001). Instead, the dissent contends that a person who enters upon school property, where public access is restricted, lacks the same expectation of privacy as one in a public place and, as a consequence, a patfrisk and search need not be justified by

---

[8] Consent is eliminated as a possibility based on the judge's finding that the defendant explicitly objected to Murphy touching the backpack.

reasonable articulable suspicion or probable cause.  Post at
.  Without citing case law supporting this alternative view of
the protections inherent in the Fourth Amendment and art. 14, or
articulating the contours of this diminished expectation of
privacy, the dissent relies instead on highly publicized
examples of school violence as support for the proposition that
the very nature of the place, a school, justifies a less
rigorous constitutional standard.  Post at   .  We discern no
such limitation in the protections guaranteed by the Fourth
Amendment or art. 14.

We acknowledge that our cases have taken judicial notice of
"the actual and potential violence in our public schools."
Commonwealth v. Milo M., 433 Mass. 149, 156 (2001).  See id. at
156-157 & n.8; Commonwealth v. Whitehead, 85 Mass. App. Ct. 134,
138-139 (2014) (reciting instances of school shootings as basis
for "heightened sensitivity" and reasonable suspicion for
patfrisk and search of backpack where defendant was dressed in
camouflage attire, openly displayed weapons, and affixed
threatening decals to vehicle).  However, that fact alone has
not been used to limit a defendant's constitutional rights.  In
Milo M., supra at 150-151, the court's reference to school
violence arose in the context of a juvenile's challenge to a
delinquency finding based on a violation of the Massachusetts
threat statute, G. L. c. 275, § 2.  The juvenile argued that the

judge focused on the apprehension of the teacher, who was the recipient of the threat, and that her subjective state of mind was insufficient to establish that he had the intent and ability to carry out the threat. Milo M., supra at 151-152. The court rejected this argument. Relying on the judicially noticed fact of "actual and potential violence in our public schools," the court concluded that the teacher's apprehension was objectively reasonable where the threats could come to fruition. Id. at 156-158. Thus, the recognition of school violence served an evidentiary purpose only; it was accorded no constitutional significance as the dissent suggests it should have in this case.

As a second basis for rejecting the traditional Fourth Amendment and art. 14 analytical framework, the dissent contends that in the school setting, the defendant had a diminished expectation of privacy such that neither reasonable articulable suspicion for the patfrisk nor probable cause for the search were required. Post at    . In reaching this conclusion, the dissent applies the test for determining whether a defendant has a reasonable expectation of privacy in the place searched such that he or she may invoke the protections of the Fourth Amendment and art. 14 against unreasonable searches. In that analysis, the inquiry is whether the defendant has a subjective expectation of privacy in the place searched and, if so, whether

society is willing to recognize that expectation of privacy as reasonable.  See California v. Ciraolo, 476 U.S. 207, 211 (1986).  See also Commonwealth v. Montanez, 410 Mass. 290, 301 (1991).  The dissent then summarily concludes that society would be unwilling to recognize a nonstudent's expectation of privacy in the school setting as reasonable.  Post at    .

Nothing in the Fourth Amendment or our art. 14 jurisprudence supports such limitations on a person's reasonable expectation of privacy.  Even in T.L.O., the Supreme Court did not tie its less stringent standard to an assumption that a student had a diminished expectation of privacy in the school setting.  Rather, the court's holding reflects a judgment that a balancing of the student's privacy interests and the school's interest in maintaining order could be fairly accomplished without offending the fundamental Fourth Amendment requirement of reasonableness.  See T.L.O., 469 U.S. at 341-343.

Last, the dissent, quoting Commonwealth v. Johnson, 454 Mass. 159, 164 (2009), reasons that "[w]here a warrantless search is based on a reasonable suspicion that an individual presents a danger, '[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.'"  Post at    .  This is not our law.  We have never

held that a warrantless search may be justified on this basis. As noted earlier, a police officer may initiate a patfrisk if she has reasonable suspicion of criminal activity and that the suspect is armed and dangerous. <u>Narcisse</u>, 457 Mass. at 9. A search, however, requires probable cause and a warrant unless the circumstances excuse the warrant requirement. The search in this case, lacking both, was not lawful.

We do not underestimate the threat of violence in schools and other public places. Recent history bears out the folly of doing so. Nonetheless, our task is to respect the jurisprudence that has developed under the Fourth Amendment and art. 14. And we do so with confidence that public safety and constitutional rights are not inherently incompatible. We acknowledge that school officials, likely cognizant of other incidents where unauthorized persons entered school property and engaged in conduct with tragic consequences, are pressed to exercise caution in circumstances where they lack control of the person or the situation. The school officials in this case were appropriately cautious of the defendant and did what was expected of them to insure the safety of the students in their charge; they called the police. Thus, it is important to emphasize here that our ruling does not bear on what school officials themselves can and should do to insure the safety of students. Nor does our ruling handicap school officials in

responding to behavior that presents a potential or real threat to student safety.  What we have said here relates only to conduct of police officers, who as the Supreme Court noted in T.L.O., 469 U.S. at 343, are "school[ed] . . . in the niceties of probable cause" and other constitutional requirements.  Where school officials who engage in protective activity are "not acting 'in conjunction with or at the behest of law enforcement agencies,'" their actions are governed by a less stringent constitutional standard.  Commonwealth v. Lawrence L., 439 Mass. 817, 820-821 (2003), quoting T.L.O., supra at 341 n.7.

2.  Sufficiency of the evidence at trial.  The defendant argues that the evidence -- possession of a concealed firearm in the absence of disruptive, violent, or threatening behavior -- is insufficient to support the conviction for disturbing a school, G. L. c. 272, § 40,[9] and that the conviction must be reversed.  We disagree.  In determining the sufficiency of the evidence, we consider "the evidence in its entirety, including, not excluding, that admitted [at] trial but found inadmissible on appeal."  Commonwealth v. DiBenedetto, 414 Mass. 37, 46 (1992), quoting Glisson v. Georgia, 192 Ga. App. 409, 410 (1989).  See Lockhart v. Nelson, 488 U.S. 33, 34 (1988).  Considering the entirety of the evidence, we reject the

---

[9] The issue is preserved, as the defendant filed a motion for a required finding of not guilty at the close of the evidence.

defendant's argument that the evidence was insufficient and that the conviction must be reversed. Nonetheless, we conclude that because the conviction was based, at least in part, on the defendant's possession of a firearm which should have been suppressed, we vacate the conviction and remand for a new trial.

a. <u>Facts</u>. We recite the facts the jury could have found based on the evidence presented at trial. On March 25, 2015, the defendant approached the entrance of the school, carrying a backpack. He arrived at the school approximately five minutes before dismissal. The school is a "lockdown" facility; it employs a double door entry system, requiring visitors to the school to ring the office to gain entry through two sets of locked doors. When the defendant rang the buzzer, the administrative assistant on duty viewed him on video surveillance and then allowed him into the office. He first told the assistant that he needed to use the bathroom, however, when she replied that the bathrooms were not for public use, the defendant told her that he was a student whose last name was "Cruz" and that he needed to get back into the school to access his locker. The assistant was suspicious; as she began to walk back to her desk to verify his identity in the school database, the defendant asked to be let back out of the building, because he had left his automobile running.

The assistant became alarmed as she viewed the defendant on the surveillance monitors quickly leave the building but not the property. She contacted the principal and the vice-principal to communicate her concerns that someone was trying to gain entry into the school. The principal and the vice-principal asked for a description of the defendant and immediately went outside the school to locate him. They did so in the school parking lot, just after classes had been dismissed. They approached the defendant, noting the odor of unburnt marijuana[10] and the defendant's red, glassy eyes. They asked the defendant what he was doing at the school, why he misrepresented his identity, and his purpose for being on the premises. The defendant replied that he was there to meet a girl. He complied with their request to follow them back into the school "to discuss a little more as to what he was doing [at the school] and . . . why he tried to gain access to the building."

They brought the defendant into a conference room, adjacent to the main office. Milton police were alerted. The principal questioned the defendant, asking him why he was at the school, why he lied about being a student, and whether he had been drinking alcohol or smoking marijuana. The defendant replied that he was at the school to meet a girl, but did not know her

---

[10] The vice-principal also noticed a faint odor of alcohol on the defendant's person.

name.  He denied drinking or smoking and apologized for lying about his identity.  At the principal's request, the defendant emptied the pockets of his pants.  The defendant was apologetic and asked whether he could leave, but he was not allowed to do so.

When Murphy arrived at the school, the vice-principal, who appeared to be upset, greeted her at the front entrance to the school.  She was led into a conference room where the defendant and the principal were waiting.  Murphy noticed the strong odor of marijuana as she entered the room.  The defendant was seated at the head of the conference table; a black backpack and items from his pockets were on the table.  Murphy noted that the principal also appeared to be upset.

The defendant appeared to be nervous; he was seated, but his legs were shaking.  Murphy asked for the defendant's name and the principal gave her the defendant's Massachusetts identification card.  She then asked the defendant to stand up and pat frisked his person.

As a result of the patfrisk, Murphy recovered a large bag of what appeared to be marijuana and a "wad" of money from the pocket of his hooded sweatshirt.  Murphy asked about the backpack; the defendant replied that it was his backpack but that she did not have the right to look inside.  Murphy "patted down" the outside of the backpack and felt something hard

inside, so she opened it and removed the contents, including a bottle of alcohol, more money, a pair of sneakers, and a small, silver firearm with a pearl-colored handle. Murphy immediately slid the firearm away from the defendant, placed him in handcuffs, read him the Miranda warnings, and sat the defendant back down at the table.

Murphy alerted Milton police that the high school was on lockdown and requested that all available officers respond. When a detective arrived, the school was already in lockdown. As the detective entered the conference room, he noticed the strong odor of marijuana. Murphy informed the detective that she had read the defendant the Miranda warnings and left the room. The detective secured the firearm and placed it in his pocket. He then asked the defendant whether he understood the Miranda warnings and whether he would agree to speak with him. The defendant told the detective that he understood the Miranda warnings and agreed to speak with him. He told the detective that he arrived in Milton from Watertown and was meeting a female student at the high school at her request. The defendant admitted that he did not have a license to carry a firearm or a firearm identification card. After the lockdown was lifted, the detective drove the defendant to the police station where he was booked.

b.  Analysis.  In reviewing the sufficiency of the evidence, we consider whether the evidence, viewed in the light most favorable to the Commonwealth, is sufficient to allow any rational trier of fact to find the essential elements of the charged crime beyond a reasonable doubt.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  General Laws c. 272, § 40, provides, in pertinent part, "Whoever wilfully interrupts or disturbs a school or other assembly of people met for a lawful purpose shall be punished . . . ."  To sustain a conviction under the statute, the Commonwealth must prove beyond a reasonable doubt that the defendant's conduct was willful and "create[d] an interruption or disturbance of the normal functioning of a school."  Commonwealth v. Bohmer, 374 Mass. 368, 372 (1978).

The parties urge starkly different interpretations of the evidence necessary to sustain a conviction under the statute. The defendant argues that the possession of a concealed firearm in the absence of disruptive, violent, or threatening behavior does not meet the Latimore standard.  The Commonwealth counters that the evidence was sufficient, where the lockdown was a "disturbance of the normal functioning of a school" and was the natural and probable consequence of the defendant's wilful act in bringing a loaded firearm onto school property.  The Commonwealth argues further that notwithstanding the lockdown,

the defendant's conduct prior to the arrival of police officers was sufficiently alarming to disrupt the school's function. Thus, the essential questions we must answer here are (1) whether the defendant's conduct was wilful and (2) whether a lockdown of the school's campus is a "disturbance of the normal functioning of a school." Bohmer, supra at 372.

i. Wilful conduct. "The wilfulness requirement of G. L. c. 272, § 40, demands . . . only that the acts of the defendant[] be wilfully performed; so long as the acts were intentional and not due to accident or inadvertence, the requirement is satisfied." Id. at 377. The specific intent to cause a disturbance is not an essential element of the crime. Id. Here, the defendant does not challenge the wilfulness element of the crime. We consider, therefore, only his claim that the act of bringing a loaded, concealed firearm onto the school campus, while he was in possession of marijuana and under the influence of alcohol, was not unreasonably disruptive within the meaning of the statute.

ii. Disturbance of the school's normal functioning. We analyze disruptive conduct using a two-prong standard: first, whether the conduct is such that "most people would find to be unreasonably disruptive," and second, whether the conduct "did in fact infringe someone's right to be undisturbed." Commonwealth v. Orlando, 371 Mass. 732, 734-735 (1977). The

first prong is objective and "protects potential defendants from prosecutions based on individual sensitivities"; the second prong "requires that the crime have a victim," and only punishes activities that "have detrimental impact."  Id. at 735.

Disruptive conduct is context specific and is necessarily dependent on its location and timing; therefore, conduct that would be acceptable in one situation may be disruptive in another.  See id.  In Bohmer, 374 Mass. at 370, we upheld the defendant's convictions under G. L. c. 272, § 40, where the defendant, in two separate incidents, interrupted classes in progress at the Massachusetts Institute of Technology to address the students in the classes after the professors asked him to leave.  Although classroom announcements in some situations may not be objectively disruptive, in Bohmer, the defendant did not have permission to make the announcements, interrupted the classes in session, and had to be forcibly removed.  See id. The possession of a loaded, concealed firearm in certain situations may not be objectively unreasonably disruptive, but where, as here, that possession results in the lockdown of a high school, the jury reasonably could conclude that "most people would find [a school lockdown] unreasonably disruptive." Orlando, supra.

In addition, the defendant's conduct had a measurable impact on those present in the school.  After Murphy discovered

the firearm in the defendant's backpack, the school was placed in lockdown for approximately two hours.[11]  Although the defendant was brought into the school shortly after school dismissal, many people, both students and nonstudents, were present, as many afterschool and community activities are conducted there.  When the school is placed in lockdown, all staff members are trained to get into the first lockable room that they are near.  The doors are locked and faculty and students are told to barricade themselves in the room so that no one can gain entrance.  Movements are restricted in the building; no one is allowed to move freely through the hallways except for police personnel, the principal, and the vice-principal.  Parents are restricted from picking up their children, and no one may leave until the lockdown is lifted.  As a result of the lockdown on March 25, 2015, approximately twenty Milton police officers were dispatched to the school and some school officials were not able to leave until hours after the lockdown ended.[12]

Based on the totality of the facts that could have been found by the jury, the sufficiency of the evidence is not a

---

[11] A lockdown occurs at the school when there has been a breach of security.  An indication is given to those in the building that they need to lock their doors and follow protocols, such as barricading the doors and restricting movement, to ensure that all the students and adults are safe.

[12] The vice-principal testified that he was unable to leave the school until 6 P.M. or 7 P.M. as a result of the lockdown.

close question.  Thus, the defendant's claim that retrial is barred lacks merit.  See Commonwealth v. Loadholt, 456 Mass. 411, 434-435 (2010), S.C., 460 Mass. 723 (20110), quoting Commonwealth v. Kater, 421 Mass. 17, 18 (1995) ("If the evidence admitted at the trial was sufficient to send the case to the jury, but is insufficient to send the case to the jury if all improperly admitted evidence is disregarded, double jeopardy principles nevertheless do not bar a retrial").  Because, however, the conviction was based, at least in part, on the defendant's possession of a firearm which should have been suppressed, we vacate the conviction and remand for a new trial.

Conclusion.  For the reasons set forth above, we conclude that the police lacked a reasonable belief that the defendant was armed and dangerous and, therefore, the patfrisk and search of the backpack was unreasonable under the Fourth Amendment and art. 14.  Therefore, we vacate the convictions of carrying a firearm without a license, carrying a dangerous weapon on school grounds, possession of a firearm without a FID card, and possession of a class D substance with intent to distribute, and remand those matters to the District Court for further proceedings consistent with this opinion.  We vacate the conviction of disturbing a school and remand for a new trial.

So ordered.

LOWY, J. (dissenting, with whom Cypher, J., joins). I disagree with the court's conclusion that it was unreasonable for Sergeant Murphy of the Milton police department to search the defendant's bag in the circumstances. Accordingly, I would affirm the defendant's convictions, including his conviction of wilful disturbance.

The "touchstone" of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights is reasonableness (citation omitted). Commonwealth v. Blais, 428 Mass. 294, 297 (1998). Where a warrantless search is based on a reasonable suspicion that an individual presents a danger, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." Commonwealth v. Johnson, 454 Mass. 159, 164 (2009), quoting Terry v. Ohio, 392 U.S. 1, 27 (1968). In determining the reasonableness of a search, "we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." Blais, supra at 297, quoting Ohio v. Robinette, 519 U.S. 33, 39 (1996). See Commonwealth v. Sanborn, 477 Mass. 393, 396 n.3 (2017) (acknowledging possibility that warrantless seizures to serve domestic abuse prevention orders may be reasonable). See also id. at 396-397

(Gants, C.J., concurring) (same, even where facts do not satisfy existing exception to warrant requirement).

Considering the totality of circumstances in this case, I conclude that the defendant had a reduced expectation of privacy and that Murphy's search of the defendant's backpack was reasonable, based on the potential danger to students. Cf. New Jersey v. T.L.O., 469 U.S. 325, 340 (1985) (T.L.O.) (in "certain limited circumstances neither [probable cause nor reasonable suspicion] is required" [citation omitted]).

An individual who attempts to gain entry to a school, where public access is restricted, does not have the same expectation of privacy as an individual in a home, on a street corner, or even in a motor vehicle. See Commonwealth v. Montanez, 410 Mass. 290, 301 (1991) (search in "constitutional sense" takes place where police intrude on constitutionally protected reasonable expectation of privacy). Determining whether such a reasonable expectation exists is a two-step inquiry: "(1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize [the reasonableness of] that expectation." Id.

Although the defendant manifested a subjective expectation of privacy, I conclude that society would not be willing to accept the reasonableness of the defendant's expectation of

privacy in the circumstances of this case.[1]  The government has a

vital interest in ensuring the safety of our schools and the

children who attend them.  In T.L.O., 469 U.S. at 340, it was

the "school setting" itself that required "some modification of

the level of suspicion of illicit activity needed to justify a

search."  See id. at 352-353 (Blackmun, J., concurring)

("Indeed, because drug use and possession of weapons have become

increasingly common among young people, an immediate response

frequently is required not just to maintain an environment

conducive to learning, but to protect the very safety of

students and school personnel").

Even dating back to 2001 -- well before the highly

publicized tragedies at the Virginia Polytechnic Institute and

State University (Virginia Tech) and in Newtown, Connecticut --

we had taken judicial notice of the danger of violence in

schools.  Commonwealth v. Milo M., 433 Mass 149, 156-157 & n.8

---

[1] I do not dispute that students have a reasonable
expectation of privacy in their schools.  The reasonableness of
that expectation, however, is lesser than the expectations of
privacy that are typically applicable in other contexts, because
students may be subject to search in the absence of either
probable cause of criminality or reasonable suspicion that they
are armed.  See New Jersey v. T.L.O., 469 U.S. 325, 341 (1985).
The question here, however, is what expectation a person with no
apparent relationship to a school, its students, or its faculty
should have when attempting to enter school grounds.  I agree
with the court that the analytical framework from T.L.O is not
applicable.  The lesser expectation of privacy possessed by
students, at least with respect to searches by school officials,
is a helpful point of reference in analyzing the defendant's
expectation of privacy.

(2001).  See Commonwealth v. Whitehead, 85 Mass. App. Ct. 134, 138 (2014) (taking judicial notice of school shootings in Columbine, Colorado; Santee, California; and Newtown, Connecticut).  Given this widely-known backdrop, individuals attempting to enter a school -- particularly without any apparent relationship to the school or the people there -- have, at best, an expectation of privacy to their persons and their belongings that is significantly less than their expectation of privacy in their homes or motor vehicles, or while on a street corner.  See Commonwealth v. Pina, 406 Mass. 540, 545, cert. denied, 498 U.S. 832 (1990) (nature of location of search is relevant to its reasonableness).  See also T.L.O., 469 U.S. at 340 (school setting reason for reducing "level of suspicion").  Rather, such an individual attempts to gain entry into a place where safety is of paramount importance and must be vigilantly safeguarded.

Further, the circumstances of this case differ from those involving searches of students, such that the distinction between searches conducted by law enforcement and those conducted by school officials does not bear the same import.  Although school officials may face dangers when searching students, they are searching individuals with whom they have some familiarity.  Ostensibly, school officials are generally equipped to deal with problems stemming from students.  To

conclude that, on these facts, a search by officials at Milton High School (school) of a nonstudent would have been subject to reduced Fourth Amendment and art. 14 scrutiny could have the undesirable effect of encouraging school officials to confront potentially dangerous individuals, rather than encouraging them to seek assistance from law enforcement with the appropriate training to handle such scenarios.

Murphy's own knowledge at the time of the search established a reasonable basis to search the defendant in the circumstances.[2] She knew that school officials had requested police assistance to deal with a nonstudent who, by duplicity, had tried to gain entry to the school.[3] Murphy arrived in the conference room where the school officials were with the

---

[2] Murphy may well have had probable cause to believe the defendant had committed trespass or attempted criminal trespass, in which case the defendant may have been subject to a search incident to arrest for that crime. See Commonwealth v. Washington, 449 Mass. 476, 481-482 (2007) (search incident to arrest may take place before arrest as long as search and arrest are "substantially contemporaneous"). This issue, however, is not argued on appeal, and in any event, I would affirm based on the defendant's reduced expectation of privacy.

[3] As the court concludes, the facts did not support the judge's findings that Murphy had actual knowledge of the defendant's specific lies. The parties did not argue, and thus the court does not address, whether the "collective knowledge" doctrine, which generally imputes the knowledge of one police officer to other police officers who are engaged in a cooperative effort, could be extended to apply to school officials in this case. See Commonwealth v. Gullick, 386 Mass. 278, 283-284 (1982) (evaluating probable cause based on collective knowledge of officers).

defendant, and it was thus reasonable for her to believe that the defendant was the nonstudent about whom she had been called. Murphy knew the school officials from previous interactions, and she observed that they were visibly distraught throughout this ordeal. Murphy also noticed the defendant appeared to be nervous, and she noted the smell of marijuana and alcohol in the school conference room. Finally, Murphy arrived shortly after classes had ended for the day, making it likely that students would be out and about the school grounds, increasing their likelihood of exposure to the potentially intoxicated defendant, should he have been released.

I conclude that the combination of the defendant's reduced expectation of privacy, the heightened government interest in school safety, and Murphy's knowledge made frisking[4] the defendant's person and backpack reasonable. Even without specific facts to suggest that he was armed, the location, the timing, the suspicious nature of the defendant's conduct, and his potential intoxication warranted the officer's concern for the safety of students at the school. See Johnson, 454 Mass. at

---

[4] Because Murphy felt the exterior of the bag and felt a hard object before she opened it, it is unnecessary to address whether the sergeant could have simply opened the bag. Although Murphy did not explicitly testify that she believed the hard object was a weapon, the judge inferred that Murphy opened the bag because she suspected the object was a weapon. This inference was reasonable considering Murphy's testimony as a whole, in which she described moving the bag out of the defendant's reach and hearing a "clank" when she did so.

164. The only alternative -- apart from potentially arresting the defendant for trespass, which would have allowed for a search incident to arrest -- would have been to return the backpack and release him, without knowing what the bag contained, at a time students were likely to be milling about the school grounds. I believe it was eminently reasonable -- and prudent -- in these circumstances for Murphy to feel the bag for weapons before potentially returning it to the defendant and allowing him to leave.

For these reasons, I respectfully dissent.