NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1244

COMMONWEALTH

vs.

TRAVAUN DALEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case involves the allowance of a motion to suppress brought by the defendant.  The Commonwealth sought leave to file an interlocutory appeal, which was allowed by a single justice of the Supreme Judicial Court.  That appeal is now before us.

Background.  The motion judge made detailed findings of fact, none of which are challenged by the Commonwealth as clearly erroneous.  These facts, "supplemented by other undisputed evidence introduced at the hearing that is not contrary to the judge's findings," Commonwealth v. Gonzalez, 487 Mass. 661, 662 (2021), include the following:  at approximately 8:30 P.M. on December 22, 2018, Sergeant Patrick Byrne of the Boston Police Department was at the intersection of Dudley

Street and Blue Hill Avenue in the Dorchester section of Boston, waiting at a red light.  He was driving an unmarked cruiser which had blue lights, sirens, and a computer in the front windshield area.  While waiting, he noticed an alert, which came up on his laptop.  It was a "shot spotter" notification indicating shots were fired from 41 Blue Hill Avenue.[1]  Sergeant Byrne saw this notification even before he then heard the radio dispatch concerning the shooting.

The address of the intersection at which he was stopped was effectively "0" Blue Hill Avenue, being at Dudley Street.  41 Blue Hill Avenue was a short distance from the intersection, and Sergeant Byrne turned left onto Blue Hill Avenue about ten to fifteen seconds after seeing the "shots fired" notification on the laptop.  He immediately saw three individuals on the sidewalk, going in the same direction as he, running toward 41 Blue Hill Avenue.  He identified these as one female, one Black male wearing all black, and another larger Black male wearing black and grey clothing, who was later identified as the defendant.

_____

[1] "A 'shot spotter' purports to detect the sound of gunshots.  Upon activation, the shot spotter transmits a notification to dispatch officers to the area from which shots are detected."  Commonwealth v. Young, 78 Mass. App. Ct. 548, 549 n.1 (2011).

2

Aware that these three individuals could have seen or heard something related to the nearby shooting, Sergeant Byrne slowed his car down and rolled down the window. He asked the three individuals from inside his car if they had heard anything. The male wearing all black, who was never identified, said, "yes," and approached the sergeant's car to begin talking to Sergeant Byrne.

Sergeant Byrne pulled over, stopping traffic behind him, and asked this unidentified male, "what did you hear?" The defendant said out loud to the unidentified male, "Be cool." The sergeant believed that the statement could be a hint to the unidentified male to remain calm or not to talk to the police. Sergeant Byrne testified that he knows from experience that there are many reasons why civilians do not wish to talk to police officers and, particularly, that civilians do not want to be seen talking to or being cooperative with the police. He had had many experiences of civilians or possible witnesses not wishing to speak with him, ignoring him, or leaving the area to avoid speaking with him.

Both the unidentified male and the female left, going in the opposite direction, back toward the intersection of Dudley Street and Blue Hill Avenue. The defendant continued walking toward 41 Blue Hill Avenue. He began walking faster, with his hands in front of his body. Sergeant Byrne did not see any of

3

the often-testified-to, now familiar indicia of a person carrying a gun. See, e.g., Commonwealth v. Evelyn, 485 Mass. 691, 708 (2020) (bulge in clothing, keeping hands pressed against body, and holding hand at waist are indicia of trying to conceal weapon); Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007) (walking with one arm held stiff and straight against body, looking nervous, and hiding one side from officers' view are indicia of trying to conceal weapon). In particular, Sergeant Byrne testified that the defendant's hands were in front of his body, but Sergeant Byrne did not see his hand reach into his pocket, nor were his pockets hanging to suggest any firearm in his pockets.

Sergeant Byrne lost sight of the defendant for a moment. He then saw the defendant's head reappear by a white Subaru parked on Blue Hill Avenue, inferring that the defendant had bent over or crouched down to a lower position, and the defendant running at full speed back towards Dudley Street, reversing his original direction of movement. (A video recording that the sergeant later saw indicated that the defendant had ducked down by the Subaru, but the sergeant did not see that at the time.) Sergeant Byrne stopped his car in the middle of the street, got out, and began chasing the defendant on the sidewalk of Blue Hill Avenue. He caught up to the defendant and tackled him to the ground. Sergeant Byrne pat

4

frisked the defendant, but he did not find anything. The defendant was then nonetheless placed in handcuffs and placed in Sergeant Byrne's cruiser. Sergeant Byrne told other officers who had arrived at the scene to look by the area of the white Subaru. After about one to two minutes of search, a firearm was located under the white Subaru about a foot from the sidewalk.

After being given Miranda warnings, the defendant was asked if he had a license to carry a firearm, and he responded that he did not and that he did not have a gun. When asked why he ran, the defendant stated he didn't know why, but it was because everyone else was running. The defendant does not challenge the legality of his interrogation under Miranda, or the voluntariness of his statements after the arrest.

Discussion. In reviewing a judge's ruling on a motion to suppress, we accept the judge's findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to be given oral testimony presented at the motion hearing. Commonwealth v. Matta, 483 Mass. 357, 359 (2019), quoting Commonwealth v. Contos, 435 Mass. 19, 32 (2001). We make an independent determination concerning the application of constitutional principles to the facts found. Commonwealth v. Wilson, 486 Mass. 328, 333-334 (2020), quoting Commonwealth v. Estabrook, 472 Mass. 852, 857 (2015).

Under art. 14 of the Massachusetts Declaration of Rights, a police officer is permitted to briefly stop someone if there is reasonable suspicion, based upon articulable facts, that the individual has committed, was committing, or was about to commit a crime. See Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996). See also Terry v. Ohio, 392 U.S. 1 (1968). The initial question here has to do with the lawfulness of the seizure of the person of the defendant. The Commonwealth defends its actions, arguing that there was reasonable suspicion that the defendant had committed or was committing the crime of carrying an unlicensed firearm.

The judge correctly concluded that the defendant was seized under art. 14 of the Massachusetts Declaration of Rights as soon as Sergeant Byrne got out of his car and pursued him. See Commonwealth v. Stoute, 422 Mass. 782, 789 (1996) ("a pursuit, which, objectively considered, indicates to a person that he would not be free to leave the area . . . without first responding to a police officer's inquiry is the functional equivalent of a seizure"). With his actions and his words of telling him to "stop," a reasonable person would not think that the defendant, although already running, was free to leave.

The Commonwealth is correct that the facts and circumstances must be assessed in their totality in order to determine whether there was reasonable suspicion for seizing the

defendant. See Commonwealth v. Meneus, 476 Mass. 231, 235 (2017). After assessing all the facts and circumstances in their totality, we conclude that there was not. Taken together, the facts found by the motion judge to be known to police at the time of the seizure did not provide reasonable suspicion that the defendant had anything to do with the shooting at 41 Blue Hill Avenue, nor that he, even independent of that, possessed or discarded a firearm.

To begin with, the defendant's initial running, in the group of three, does nothing to suggest participation in the shooting in 41 Blue Hill Avenue. The defendant was running toward the scene of the shooting. Common sense dictates that people who are running after committing shootings run away from the scene, not toward it. Running away from the scene of a crime creates suspicion of participation. Running toward it does not.

Telling the other male in the group to "be cool" when he began to speak to the police may add a little to the calculus, but given the pervasiveness in Boston of unwillingness to cooperate with the police, or, especially, to be seen cooperating with the police, this statement from an individual who was running toward the scene of the shooting does not appreciably add to the suspicion that he was actually involved in the shooting. The evasiveness from the police of the

7

defendant, a young Black man, reflected by his walking more quickly, ducking down by the Subaru, and then running, as we have been instructed by the Supreme Judicial Court, must be "significantly discount[ed]" given the history of race-based policing in Boston. Evelyn, 485 Mass. at 708-709. In addition, "[i]n the absence of constitutional justification for a threshold inquiry, 'our law guards a person's freedom to speak or not to speak to a police officer. A person also may choose to walk away [or run away], avoiding altogether any contact with police.'" Meneus, 476 Mass. at 240, quoting Commonwealth v. Warren, 475 Mass. 530, 538 (2016). With nothing linking the defendant to the shooting, the fact that he ran to avoid the police "permits no inference of criminal activity." Meneus, supra.

This leaves only the defendant popping up after having apparently bent or crouched down by the car, running. The defendant was not seen discarding anything nor was there any metallic sound that might have indicated he had disposed of a weapon. Cf. Commonwealth v. Franklin, 456 Mass. 818, 823 (2010) (police saw defendant throw something over fence and heard metallic sound when item hit cement or asphalt). The officer did not testify that such bending or crouching is an action typically or routinely seen by people discarding guns. The defendant's action thus does not support an inference that he

8

had a gun or was involved in the shooting.  Put another way, the police did not have reasonable suspicion justifying a seizure because, while trying to avoid them, the defendant bent over or crouched down next to a parked car and then stood up and ran away.  And, at least with no preexisting reason to think the defendant had a gun, the facts and circumstances taken as a whole were not sufficient to create reasonable suspicion that he possessed (or possessed and then discarded) a gun.  A fortiori, there was not a basis for reasonable suspicion the defendant was armed or dangerous, which was required for his pat frisk.  See Commonwealth v. Villagran, 477 Mass. 711, 727 (2017) (this is the standard under art. 14 and the Fourth Amendment).

To the extent, if any, there is a dispute or question about the scope of what was ordered suppressed,[2] it was not raised in the trial court, though it might properly be the subject of a

_____

[2] The Commonwealth states that "it is not clear . . . from the motion judge's decision, whether she suppressed the firearm," and argues that the defendant had no reasonable expectation of privacy in the area under the Subaru, and that the firearm "was not a 'fruit' of an unlawful search or seizure."  The defendant responds that, "The motion judge[] suppressed the seizure of the defendant, not the firearm. . . . Therefore the defendant is not addressing the Commonwealth's arguments with respect to the recovery of the firearm as they are moot, not contested and not included in the motion judge's ruling."

9

motion for clarification; we express no opinion on the merits of such a motion should it be brought.

Order allowing motion to suppress affirmed.

By the Court (Rubin, Ditkoff & Grant, JJ.[3]),

*Paul Little*

Clerk

Entered: October 4, 2024.

---

[3] The panelists are listed in order of seniority.