# United States Court of Appeals
## For the First Circuit

No. 08-1156

UNITED STATES OF AMERICA,

Appellee,

v.

RASHIEK T. CANNON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, U.S. District Judge]

Before

Torruella, Ripple,[*] and Boudin,
Circuit Judges.

David J. Barend, for appellant.
Mark T. Quinlivan, Assistant U.S. Attorney, with whom Michael
J. Sullivan, United States Attorney, and Angel Kelley Brown,
Assistant U.S. Attorney, were on brief for appellee.

December 23, 2009

---

[*] Of the Seventh Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** Appellant Rashiek T. Cannon pled guilty to a single count of being a felon in possession of a firearm, after police found him carrying a loaded gun during a routine traffic stop. The district court imposed a seventy month sentence based, in part, on its determination that Cannon had possessed the firearm "in connection with" a felony drug offense for purposes of U.S.S.G. § 2K2.1(b)(6). In this appeal, Cannon challenges the district court's application of the § 2K2.1(b)(6) enhancement, contending that the government failed to prove by a preponderance of evidence that he knew about the existence of drugs found in the car in which he was arrested, or that those drugs were intended for distribution and not personal use. After careful review, we affirm.

## I. Background

### A. Cannon's Arrest[1]

On October 5, 2004, three Brockton police officers were on patrol in the area of Walnut Street when they observed a red sport utility vehicle (SUV) with three occupants exceeding the speed limit. The officers flashed their lights and pulled over the SUV. As one of the officers approached, he saw Cannon sitting in the right front passenger seat with a firearm visible in his right front jacket pocket. He alerted the other officers, secured the

---

[1] We draw these facts from the uncontested portions of the presentence report (PSR). See United States v. Brewster, 127 F.3d 22, 24 (1st Cir. 1997).

gun -- a loaded .38 caliber Charter Arms revolver -- and then removed Cannon from the vehicle and placed him on the pavement. The officers ordered the driver, Corey Allen, to get out of the SUV; they told the rear seat passenger, Carlos Báez, to remain inside. Allen tried to flee, but he was quickly caught by the officers.

The officers searched Allen and found that he was carrying a bag of marijuana. The quantity of marijuana is not reflected in the record. The officers then removed Báez from the rear seat and searched the SUV. They found two bags, which the PSR describes as containing "two large pieces and one small piece" of crack cocaine. However, there is no information in the record as to the specific drug quantity. The record also fails to indicate where in the SUV the crack cocaine was found, whether it was accessible to Cannon in the front passenger seat, or whether it was in plain view.

All three occupants were arrested. Later, during the booking process, the police discovered that Allen had a second bag of marijuana, also of unknown quantity, hidden in his sock and $1,715 in cash. Báez had $100 on him and Cannon had $272. All of the men said that they were unemployed.

### B. Guilty Plea and Sentencing

Cannon, who had some prior convictions, qualified as a felon for purpose of 18 U.S.C. § 922(g)(1), and was charged under the statute with unlawful possession of a firearm.[2] In March 2007 Cannon moved to have a pre-plea PSR prepared by the Probation Department. The PSR assigned Cannon a criminal history category of V, and recommended a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) because Cannon had possessed the firearm "in connection with another felony offense, to wit: distribution of narcotics." The PSR allowed for a three-level reduction for acceptance of responsibility and assigned a total offense level of twenty-one. Cannon faced a maximum term of imprisonment of ten years, and the PSR arrived at a sentencing range of seventy to eighty-seven months.

Cannon objected to the PSR's recommended § 2K2.1(b)(6) enhancement, contending that there was no evidence he knew about the drugs found in the SUV or, even if he did, that he intended to distribute them. Cannon emphasized that he did not own the car and, unlike the driver, did not attempt to flee. Thus, he argued, there was no basis to conclude that he possessed the gun "in connection with" any drug offense. The Probation Department maintained that the enhancement was proper because it applies when

---

[2] The record does not disclose what charges, if any, were brought against Allen and Báez.

a gun is found in close proximity to drugs and has the potential to facilitate another felony offense. See U.S.S.G. § 2k2.1(B)(6), application note 14.

Cannon pled guilty in October 2007. At the Rule 11 hearing, Cannon admitted only to possessing the firearm; there was no discussion regarding the § 2K2.1(b)(6) enhancement or the facts supporting that enhancement. Cannon acknowledged that he could face up to ten years in prison as a result of his plea.

Later, at the sentencing hearing, the government recommended that Cannon receive full credit for acceptance of responsibility and a sentence at the low end of the Guidelines range. Cannon's attorney reasserted his objection to the § 2K2.1 (b)(6) enhancement and, in his allocution, Cannon denied that he had "anything to do with the drugs they found." The government countered that circumstantial evidence supported the enhancement, stating "there is a very strong argument that the defendant was in constructive possession of the drugs."

The district court found that, while it was "not possible to decide the question with absolute certainty or, necessarily beyond a reasonable doubt," the evidence supporting the enhancement was "very strong against the defendant." The court concluded that "a fair determination of the [enhancement issue] is that it be decided by putting a sentence at the very bottom of the Guidelines." Accordingly, Cannon was sentenced to seventy months'

imprisonment, at the low end of the recommended range. As the court noted, the sentence "[took] into consideration that [Cannon] was found with drugs and that that was related to the offense in this case." This appeal followed.

## II. **Discussion**

We review the district court's interpretation of the Sentencing Guidelines de novo, factual findings for clear error, and its application of the Guidelines to a particular set of facts on a "sliding scale." United States v. Sicher, 576 F.3d 64, 71 & n.6 (1st Cir. 2009). Where, as here, a defendant challenges the factual predicate supporting the district court's application of a sentencing enhancement, "we ask only whether the court clearly erred in finding that the government proved the disputed fact by a preponderance of the evidence." United States v. Luciano, 414 F.3d 174, 180 (1st Cir. 2005). "[W]here there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." United States v. Campusano, 556 F.3d 36, 39 (1st Cir. 2009) (internal quotation marks omitted).

Pursuant to U.S.S.G. § 2K2.1(b)(6), a defendant is subject to a four-level increase in his base offense calculation if he "used or possessed any firearm or ammunition in connection with another felony offense; or possessed . . . any firearm . . . with knowledge, intent, or reason to believe that it would be used or

-6-

possessed in connection with another felony offense."  We have held that, as used in this provision of the Guidelines, "the phrase 'in connection with' should be interpreted broadly."  United States v. Thompson, 32 F.3d 1, 7 (1st Cir. 1994).

> Although there must be a causal or logical relation or sequence between the possession and the related offense, and mere coincidental possession is insufficient, we will find that a firearm has been used "in connection with" an offense if the possession has the potential to aid or facilitate the other crime.

United States v. Peterson, 233 F.3d 101, 111 (1st Cir. 2000). "[I]n the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, . . . [the enhancement] is warranted because the presence of the firearm has the potential of facilitating another felony offense."  U.S.S.G. § 2K2.1(b)(6), application note 14.

In this appeal, Cannon argues that the § 2K2.1(b)(6) enhancement should not have applied because the record is insufficient to support the inference that he knew about the drugs or, in the alternative, that the drugs were intended for anything but personal consumption.  While Cannon acknowledges that he was found with the firearm in "close proximity" to drugs, he emphasizes the absence of direct proof linking him to the drugs or drug distribution, including evidence as to drug quantity, whether the drugs found in the SUV were in plain view, or whether they were otherwise readily accessible to him in the front seat.  He

maintains that his possession of the firearm was merely coincidental.

While direct proof of Cannon's knowledge and intent regarding the drugs may be lacking, "[a] sentencing court is entitled to rely on circumstantial evidence, and draw plausible inferences therefrom" in determining whether an enhancement should apply. United States v. Marceau, 554 F.3d 24, 32 (1st Cir. 2009) (internal citations omitted); see Sicher, 576 F.3d at 71. Indeed, in narcotics cases, we have often recognized that knowledge and intent "'must be proved largely by circumstantial evidence.'" United States v. Hernández, 218 F.3d 58, 66 (1st Cir. 2000)(quoting United States v. Valencia, 907 F.2d 671, 678 (7th Cir. 1990)). In this case, the record reflects that Cannon, no stranger to the drug trade, was arrested with a loaded revolver while traveling in a vehicle in which police found multiple packages of drugs, as well as a substantial amount of cash among the occupants, all of whom indicated they were unemployed. These circumstantial facts, taken together, were sufficient to permit the district court to reasonably infer under a preponderance standard that Cannon had knowledge of the drugs and that the drugs were intended for sale and not personal consumption. As we discuss, these findings are intertwined.[3]

---

[3] The district court determined that Cannon was "found with drugs" and that the firearm was possessed "in the presence at least of drug transactions." These determinations necessarily encompass

First, the large quantity of cash found on the driver, and the lesser but still substantial amounts found on Cannon and Báez, support the inference that the car's occupants were engaged in the sale, rather than casual use, of drugs. See, e.g., United States v. Ayala-García, 574 F.3d 5, 13 (1st Cir. 2009) (finding that "[t]he large amount of cash," viz., $1,068, found in bag containing individually-packaged drugs supports inference that drugs were intended for distribution); United States v. Mangual-Santiago, 562 F.3d 411, 425 (1st Cir. 2009) (explaining that "large amounts of cash," such as the $1000 found on the defendant, "are . . . probative of the intent to distribute narcotics" (internal quotation marks omitted)).

We have often held that firearms, too, are probative of an intent to distribute narcotics. See, e.g., United States v. Rivera-Calderón, 578 F.3d 78, 94 (1st Cir. 2009) (evidence that defendant carried firearm in vicinity of armed drug conspiracy supports inference of membership in the conspiracy; "[i]n drug

_____

findings that Cannon knew about the drugs in the SUV and that those drugs were intended for distribution and not personal consumption. See Sicher, 576 F.3d at 71 (explaining that district courts need not "specify the precise basis for the application of [an] enhancement" because "a sentencing court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did")(internal quotation marks and alterations omitted); see also United States v. Tavano, 12 F.3d 301, 307 (1st Cir. 1993). Because we find these facts sufficient to permit application of the enhancement, we do not address whether the district court found, or the government proved, that Cannon was in constructive possession of the drugs, an issue which the parties have not briefed in any detail.

trafficking firearms have become 'tools of the trade' and thus are probative of the existence of a drug conspiracy").  While we acknowledge that a gun's physical proximity to drugs alone may be insufficient to justify a court in applying the enhancement in all circumstances, cf. United States v. Sturtevant, 62 F.3d 33, 34-35 (1st Cir. 1995)(per curiam)(citing as an example of coincidental possession "an accountant who, while forging checks, happens to have a gun in the desk drawer"), the district court was not required to turn a blind eye to the logical relationship between the presence of multiple packages of drugs, the loaded firearm, and the large amount of cash in determining whether the drugs found in the SUV were intended for distribution or personal use. See, e.g., United States v. Ford, 22 F.3d 374, 383 (1st Cir. 1994) ("[F]irearms and large amounts of cash are each probative of the intent to distribute narcotics."); see also United States v. Fisher, 912 F.2d 728, 731 (4th Cir. 1990)("The large amount of cash found in [the defendant's] possession and his ownership of handguns is . . . circumstantial evidence of his involvement in narcotics distribution.").

       We also find Cannon's history of drug distribution relevant to the question of whether he was, as he claims, ignorant of the drugs and their intended distribution. See United States v. Richardson, 510 F.3d 622, 628 (6th Cir. 2007) (where defendant "had two prior convictions for possession with intent to distribute

controlled substances and less than four months after the instant offense, he was convicted again for possession and distribution of marijuana . . . he had an established knowledge and participation in drug trafficking activity" which supports inference that defendant possessed gun "in connection with" drugs found in close proximity); United States v. LePage, 477 F.3d 485, 489 (7th Cir. 2007) (defendant's prior sale of drugs "consistent with an inference that he is a trafficker").  The PSR indicates that in March 2002 Cannon was and charged with possession of, with intent to distribute, crack cocaine, after he was found with a bag of crack, three bags of marijuana, and $2,485 in cash -- circumstances strikingly similar to those of the instant offense.  The charge was later reduced to simple possession, and Cannon was convicted.  The PSR also reveals that, just three months after his arrest in this case, Cannon was again arrested and subsequently convicted for possession of, with intent to distribute, crack cocaine.  This history further supports the inference that Cannon was no idle passenger at the time of this offense, and that his possession of the loaded gun was not mere happenstance.  The district court was permitted to use its common sense to conclude that Cannon's loaded gun and the drugs found in the SUV were the tools of a single, shared criminal endeavor.  Cf. United States v. Batista-Polanco, 927 F.2d 14, 18 (1st Cir. 1991)("[I]t runs counter to human

-11-

experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes.").

In opposing the enhancement, Cannon's principal theme is that the record in this case fails to reflect direct evidence of knowledge, or an intent to distribute, of the sort present in other cases where § 2K2.1(b)(6) enhancements have been upheld.  Thus, Cannon emphasizes that he has never admitted to knowledge of the drugs, compare United States v. Gonzáles, 506 F.3d 940, 947 (9th Cir. 2007); that no witness ever saw him involved in drug activity related to the instant offense, compare Thompson, 32 F.3d at 7; that there is no evidence that the drugs were visible or readily accessible to him, or found alongside certain paraphernalia associated with drug distribution, such as scales or ledgers, compare Peterson, 233 F.3d at 104; and, finally, that there is no evidence as to the nature of his relationship with Allen and Báez sufficient to permit an inference of a close association, compare Richardson, 510 F.3d at 627-28 (attributing knowledge to defendant of drugs found in his girlfriend's purse).  However, the cases on which Cannon relies do not purport to lay a minimum evidentiary threshold for application of an enhancement under § 2K2.1(b)(6). Rather, as we have explained, the issue presented for review is whether the district court clearly erred in finding, by a preponderance of the evidence, that Cannon knew about the drugs and that the drugs were intended for distribution.  Based on the

considerations discussed above, we conclude that the totality of evidence before the district court plausibly supports such conclusions.

Accordingly, because we find that the record supports the inference Cannon possessed the loaded gun knowing that there were drugs in the SUV which were intended for sale, we hold that Cannon's possession of the firearm had the potential to facilitate the offense of distribution -- by emboldening the enterprise, aiding the collection of a drug debt, or in any number of foreseeable ways -- and was therefore "connect[ed] with" that felony for purposes of the enhancement. See, e.g., Thompson, 32 F.3d at 8 (noting that "the usual case in which the § 2K2.1 [enhancement] is used to apply drug guidelines to a firearms offender is where the defendant used a firearm for protection during a drug transaction or had the firearm available to protect his supply of drugs"); see also United States v. Loney, 219 F.3d 281, 288 (3d Cir. 2000) ("[W]hen a defendant has a loaded gun on his person while caught in the midst of a crime that involves in-person transactions, . . . a district judge can reasonably infer that there is a relationship between the gun and the offense . . . ." (citing Sturtevant, 62 F.3d at 33)).[4]

_____

[4] Because we find that the district court plausibly determined that the drugs were intended for distribution, we decline to address the alternative argument raised by the government that Cannon's possession of the gun in connection with the felony of simple possession of drugs for personal use would support

-13-

**Affirmed**.

---

enhancement under § 2K2.1(b)(6).   See LePage, 477 F.3d at 489 (noting that "possessing a gun while engaged in the casual use of drugs might not give rise to the inference that the gun was possessed in connection with the drugs").