# United States Court of Appeals
## For the First Circuit

No. 17-2102

UNITED STATES,

Appellee,

v.

CAETANO OLIVEIRA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Samia Hossain, Assistant Federal Public Defender, with whom Jessica P. Thrall, Assistant Federal Public Defender, was on brief for appellant.
Alexia Rhae De Vincentis, Assistant United States Attorney, with whom Caitlin E. Keiper, Special Assistant United States Attorney, and Andrew E. Lelling, United States Attorney, were on brief for appellee.

October 24, 2018

**LYNCH**, **Circuit Judge**.  Brockton, Massachusetts police arrested Caetano Oliveira in August 2016 while executing a search warrant on an apartment in which drugs, drug paraphernalia, guns, and ammunition were found.  Following a federal indictment, Oliveira pleaded guilty to being a felon in possession of a handgun, a pistol, and twenty rounds of ammunition in violation of 18 U.S.C. § 922(g)(1).  His prior state convictions included drug distribution and assault with a dangerous weapon ("ADW").

Oliveira requested a sentence of forty-eight months. The government recommended 100 months, a sentence at the bottom of the 100- to 120-month range calculated in the presentence report ("PSR").  The district court sentenced Oliveira to eighty-six months, fourteen months below the government recommendation.  The district court could have reached the same sentence within the guideline range, but calculated the sentence on the basis of an enhancement.

Appealing this sentence, Oliveira first disputes the district court's determination that his prior Massachusetts ADW conviction qualifies as a "crime of violence" under the United States Sentencing Guidelines ("the Guidelines").  Second, he challenges the district court's application of a sentencing enhancement for possession "in connection with" another felony. See U.S.S.G. § 2K2.1(b)(6)(B).  We affirm.

In the summer of 2016, Brockton police had been investigating a heroin dealer, Sariah Lynn Miranda, who lived in the apartment where Oliveira was arrested.  After buying heroin on multiple occasions from Miranda through a confidential informant, police obtained a search warrant for Miranda's apartment.  Once inside, police found five grams of heroin, cash, a scale, and drug packaging materials in the bedroom occupied by Miranda.  As Miranda attempted to leave -- with three more grams of heroin in hand -- police arrested her.

In the apartment's second bedroom, police encountered Oliveira, whose girlfriend, Saneta Gomes, was an occupant of the apartment and Miranda's sister.  There, police found, at the end of the bed, a shoe box containing $160 in cash and 7.6 grams of marijuana packaged into three separate sandwich bags.  A digital scale was perched on a shoe rack.  And a box of empty sandwich bags was visible on top of the dresser.

Inside that dresser were two loaded weapons -- a 9mm handgun and a .40 caliber pistol.  There were eight rounds of 9mm ammunition and twelve rounds of .40 caliber ammunition.  The handgun, which had been reported stolen, was located on the dresser's shelf, while the pistol was stashed, with some clothes, inside an orange clothing cube.

Atop the dresser, police also spotted a copy of Oliveira's resume. Clothing and mail belonging to Oliveira were also found around the room. Although the resume and mail listed addresses for Oliveira other than the apartment, Gomes, who lived in the room, told police, "he stays here a lot."

Oliveira and Gomes were arrested, and Oliveira admitted that the guns were his. Asked later by a detective why he had the guns, the defendant answered, "I still have people on the street that don't like me."

At the time of his arrest, Oliveira was out on bail, awaiting trial in Massachusetts on charges of ordering an associate to shoot at two undercover police officers who were talking to an informant. During the trial on those charges, in September 2016, Oliveira pleaded guilty to ADW. This was his third state conviction. Oliveira's first two state convictions were in 2011 for illegal gun possession and distribution of crack cocaine.[1]

After Oliveira's guilty plea to the federal charges, the Probation Office prepared a PSR, which recommended a base offense level ("BOL") of 24 based on Oliveira's prior "two felony convictions for either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). In 2016, the First

---

[1] Another charge for possession with intent to distribute while carrying a loaded firearm was vacated in 2017 due to misconduct at the state drug lab.

Circuit had held in United States v. Fields, 823 F.3d 20, 34-35 (1st Cir. 2016), that Massachusetts ADW is a "crime of violence" under the Guidelines.

The PSR also recommended several adjustments to this BOL. Relevant is a four-level increase under U.S.S.G. § 2K2.1(b)(6)(B) for "possess[ion] . . . in connection with another felony offense," which applied based on the evidence in the bedroom of possession with intent to distribute marijuana. In the end, a total offense level ("TOL") of 27 was calculated.

In calculating Oliveira's criminal history category ("CHC") of IV, the PSR considered the past convictions for gun possession, crack cocaine distribution, and for assaulting the police officers. Also relevant was Oliveira's past membership in the Ames Street/Flameville Legend Boys gang in Brockton.

At the sentencing hearing on October 25, 2017, the district court considered Oliveira's objections to the PSR. Oliveira first argued that Massachusetts ADW is not a "crime of violence" under the Guidelines and that therefore his BOL and CHC should be lower. The district court overruled the objection, "follow[ing] the First Circuit," where that crime "is considered a crime of violence."

As to the enhancement under U.S.S.G. § 2K2.1(b)(6)(B), Oliveira contended that no "felony" had occurred. He asserted that the marijuana, bags, and scale were for Gomes's personal use,

- 5 -

not for distribution. In his sentencing memorandum, Oliveira had noted that the state had charged Gomes, not Oliveira, with possession with intent to distribute. After that charge was reduced to simple possession, a civil infraction, she admitted responsibility and paid a fine. In any event, Oliveira continued, the connection between the alleged drug trafficking and the guns was too remote to permit application of the enhancement.

The district court found there was "ample evidence to show that the Defendant was fully involved with this potential distribution of marijuana." And it determined that the enhancement was appropriate because "a firearm [was] found in close proximity to drugs, drug-manufacturing materials or drug paraphernalia."

As mentioned, the district court sentenced Oliveira to eighty-six months in prison and to three years of supervised release during which he is not to enter Brockton and not to associate with members of the Flameville Legend Boys/Ames Street gang. Oliveira's involvement in multiple gang-related shootings was discussed at the sentencing hearing. In one incident, Oliveira had been the target but his sixteen-year-old girlfriend, who was standing next to him, was killed. Just months before this incident, Oliveira had been shot in the head, suffering permanent hearing damage. At the sentencing, the defendant acknowledged, "I need to leave Brockton. . . . My problems are in Brockton." The district court "imposed a sentence 15% below the low end of the

Guideline range to reflect defendant's effort to improve his situation and willingness to comply with the geographic and associational restrictions imposed."

## II.

We examine the two issues on appeal, in turn.

First, questions of Guidelines interpretation -- including what counts as a "crime of violence" -- are reviewed de novo. See United States v. Cannon, 589 F.3d 514, 516-17 (1st Cir. 2009). As the district court noted, it is settled First Circuit law that Massachusetts ADW is a "crime of violence" under the Guidelines. In United States v. Whindleton, 797 F.3d 105, 115-16 (1st Cir. 2015), we held that the offense categorically qualifies as a "violent felony" under the force clause of the Armed Career Criminal Act. And because the definition of "violent felony" "mirrors" the definition of "crime of violence" in the Guidelines, United States v. Montoya, 844 F.3d 63, 73 (1st Cir. 2016), we held in Fields that Massachusetts ADW is a "crime of violence" under the Guidelines, 823 F.3d at 34-35. Fields remains good law.[2]

Second, Oliveira challenges on several grounds the enhancement for possession "in connection" with another felony under U.S.S.G. § 2K2.1(b)(6)(B). A district court must find that

---

[2] Indeed, Oliveira acknowledges that precedent forecloses his objection, but "raises the argument to preserve it for further review on certiorari to the Supreme Court."

a preponderance of the evidence supports the enhancement to apply it. United States v. Paneto, 661 F.3d 709, 715 (1st Cir. 2011). We then review the district court's underlying findings of fact for clear error and its application of the Guidelines to those facts on a "sliding scale." United States v. Matthews, 749 F.3d 99, 105 (1st Cir. 2014); see also Cannon, 589 F.3d at 516-17.

That standard of review decides this issue. We cannot say that the district court clearly erred. As we will detail, the district court applied the enhancement based on a chain of inferences, including that there was distribution of the drugs found in the bedrooms along with drug paraphernalia, that Oliveira knew of and participated in this, and that illegal guns and ammunition were connected to the distribution. That chain may be tenuous. But, under the clear error standard, as long as these inferences were "rational," and we believe that they were, we cannot reverse. A "sentencing court's choice among rational but competing inferences cannot be clearly erroneous." Matthews, 749 F.3d at 105; see also Cannon, 589 F.3d at 517. Admittedly, some of those factual inferences were built on thin evidence. Yet the clear error standard means that we "will not reverse" factual findings "absent 'a strong, unyielding belief that a mistake has been made.'" United States v. Gómez-Encarnación, 885 F.3d 52, 56 (1st Cir. 2018) (quoting United States v. Torres-Velazquez, 480

- 8 -

F.3d 100, 103 (1st Cir. 2007)).  As we will explain, we lack that strong, unyielding belief here.

The district court found felony distribution, by a preponderance of the evidence, based on the totality of the evidence in the bedroom: the 7.6 grams of marijuana split across three bags, in addition to the empty sandwich bags, the cash, the scale, and the two illegal guns.  These markers are "probative of the intent to distribute narcotics."  United States v. Ford, 22 F.3d 374, 383 (1st Cir. 1994).  That is especially so when found together.  See Matthews, 749 F.3d at 105 (explaining that we look at evidence of intent to distribute "in its totality").  Finally, Miranda's heroin dealing in the other bedroom of the small apartment buttresses the inference that the marijuana, scale, cash, bags, and guns were possessed for distribution.  In the end, we cannot say -- with the strong, unyielding belief required of clear error review -- that the district court made a clear error in inferring distribution from this evidence.

We also see no clear error in the district court's choice not to accept Oliveira's claim that the marijuana was intended exclusively for Gomes's personal use.  Gomes made no such statement to the Probation Office.  Rather, Oliveira urges that this is a necessary implication of the plea deal Gomes struck with the state, under which her distribution charge was reduced to simple possession.  The scale and baggies, he says, are also consistent

with possession for personal use.  Oliveira emphasizes that "the Commonwealth [of Massachusetts] has . . . de-criminalized the possession of less than one ounce of marijuana."[3]  As a result, he says, "it is unreasonable to automatically assume that digital scales, cash, and sandwich bags are distribution paraphernalia." For example, the scale could have helped Gomes "ensure [she was] purchasing amounts [of marijuana] within the confines of the law."

None of that means there was clear error.  It is not at all obvious (and Oliveira supplied no evidence of a reason) why Oliveira or Gomes would have kept the marijuana in numerous baggies if it were for personal use.  While plastic bags and scales have other uses, there is neither evidence nor an assertion by Oliveira that the bags and scale were used for, say, food preparation (and, remember, they were found in the bedroom, not in the kitchen), or for any other reason.  Finally, near the drugs and classic drug distribution paraphernalia, Oliveira possessed two illegal guns. Guns are "tools of" the drug trafficking trade.  See Ford, 22 F.3d at 383.  And Oliveira was a convicted practitioner of that trade who had recently targeted undercover officers.  At most, Oliveira's theory shows that the district court chose between two possible interpretations of the facts.  What Oliveira fails to show is that

---

[3]    Under Massachusetts law, "a person 21 years of age or older" cannot face criminal penalties for "using, purchasing, processing or manufacturing 1 ounce or less of marijuana."  Mass. Gen. Laws ch. 94G, § 7.

the district court's inference that the marijuana was for distribution was irrational. We cannot say there was clear error.

The district court also did not clearly err in finding "ample evidence" of Oliveira's involvement with the drug distribution. Oliveira stayed in the apartment "a lot" and his personal items -- his guns and ammunition, resume, mail, and clothing -- were found there. Further, Oliveira was actually there at the time of the police search, at the time the officers found plastic bags, the digital scale, and three bags of marijuana in one bedroom and heroin for distribution in another. Based on this, we cannot say that the district court clearly erred in finding that Oliveira was involved.

Oliveira's argument that this finding was improper because neither the marijuana nor the bedroom were his misses the mark. The bedroom, drugs, and paraphernalia need not have belonged to Oliveira. The enhancement applies where the defendant has access to the drugs and where his knowledge of drug distribution can be inferred. See Cannon, 589 F.3d at 519. Oliveira's frequent overnight stays in the room and the presence of his belongings there indicate sufficient access. See United States v. Zavala Maldonado, 23 F.3d 4, 7 (1st Cir. 1994) (defining constructive possession in part as location of the object in a "domain specially accessible to the defendant"). As to his knowledge, Oliveira claims ignorance of the marijuana inside the shoe box and the scale

on the shoe rack and maintains that his knowledge cannot be inferred from awareness of the sandwich bags alone. The marijuana and cash were found in a box at the end of the bed often shared by Gomes and Oliveira. The particular usefulness of plastic bags and small digi-scales for packaging drugs for resale is well known, especially among those who, like Oliveira, have experience with drug distribution. See Cannon, 589 F.3d at 515-19 (finding knowledge based in part on defendant's "history of drug distribution"). In the end, Oliveira had the requisite knowledge.

Oliveira's final argument is that the district court erred in applying the enhancement because the guns and ammunition were possessed for his own protection and not "in connection with" drug trafficking. In applying the § 2K2.1(b)(6)(B) enhancement, the district court relied on Guidelines Application Note 14(B)(ii), which states that the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." Based on this Note, we have held that the enhancement attaches where firearms near drugs "ha[ve] the potential of facilitating" drug trafficking. Paneto, 661 F.3d at 717 (emphasis added). Applying the enhancement was not inappropriate, then, in light of the facts: Oliveira's firearms were loaded and next to extra ammunition in a bedroom containing drugs and drug trafficking materials. See id. (firearm and cocaine

in "same small single-floor apartment"); United States v. Sturtevant, 62 F.3d 33, 34 (1st Cir. 1995) (per curiam) ("[T]he presence of a readily available weapon in a location containing drugs is enough.") Oliveira's statement that he possessed the guns for his own protection does not change this, for the simple reason that guns can be possessed for more than one purpose.

## III.

We affirm the defendant's sentence.


**-Concurring Opinion Follows-**

**THOMPSON**, **<u>Circuit Judge, concurring</u>.** I write separately to draw the attention of bench and bar to the only truly troubling aspect of this appeal — namely, the district judge's use of inference-drawing to find felony drug distribution by a preponderance of the evidence, thus triggering a major sentencing enhancement for Oliveira.

I know, as the lead opinion notes, that the Federal Reporter is teeming with First-Circuit cases letting factfinders infer a defendant's distributive intent from the drug amounts possessed, as well as from the possession of drug-trade accoutrements like digital scales, baggies, cash, and guns. <u>See</u> <u>United States</u> v. <u>Cortés-Cabán</u>, 691 F.3d 1, 35-36 & nn. 37, 39-41, 43, 45 (1st Cir. 2012) (citing a host of cases); <u>see also</u> <u>United States</u> v. <u>Matthews</u>, 749 F.3d 99, 105 (1st Cir. 2014). And I also know that the standard of review for assessing sentencing enhancements — clear error — often determines the issue's outcome. That's so because, as the lead opinion also notes, clear-error review is incredibly deferential, requiring us to accept the judge's fact findings absent a strong and abiding belief that he slipped up — all while being mindful that the judge's choice between two plausible but differing fact inferences can't be clearly erroneous. <u>See, e.g.</u>, <u>Matthews</u>, 749 F.3d at 105; <u>Cumpiano</u> v. <u>Banco Santander P.R.</u>, 902 F.2d 148, 152 (1st Cir. 1990). Which makes showing clear error a hard task for any appellant, <u>see, e.g.</u>,

- 14 -

Matthews, 749 F.3d at 105 — a task Oliveira has not accomplished here.

Now here's the problem. Times have changed since we first approved the sort of inference-drawing I just described. Oliveira was charged federally, to be sure. But there's a "growing" trend at the state level toward legalizing or at least decriminalizing marijuana. See DeBartolo v. United States, 790 F.3d 775, 779 (7th Cir. 2015) (Posner, J.). Take, for example, some of the jurisdictions in our circuit, whose relevant laws I discuss next (without delving into every last legal detail).

Massachusetts, for example, has legalized recreational marijuana. As the lead opinion states, a Massachusetts statute — titled "Personal use of marijuana" — says that persons "21 years old or older" can't be punished criminally for "using, purchasing, processing or manufacturing 1 ounce or less of marijuana," see Mass. Gen. Laws. Ch. 94G, § 7; Oliveira's 7.6 grams of marijuana is less than 1 ounce (for anyone unfamiliar with the metric system, 1 ounce equals 28.3495 grams). Nor can persons 21 years old or older be on the hook criminally "for . . . giving away . . . up to 1 ounce of marijuana . . . to a person 21 years of age or older, as long as the transfer is not advertised or promoted to the public." See id. And because of these developments, Massachusetts's top court — known colloquially as the "SJC" (short for the "Supreme Judicial Court") — has held that the mere smell

- 15 -

of marijuana is "not sufficient to support a reasonable suspicion of criminal activity." See Commonwealth v. Villagran, 81 N.E.3d 310, 317 (Mass. 2017) (citing Commonwealth v. Rodriguez, 37 N.E.3d 611, 618 (Mass. 2015)). What's more, persons 21 years old or older can't be punished criminally in the Commonwealth "for possessing, purchasing, or otherwise obtaining or manufacturing marijuana accessories or for selling or otherwise transferring marijuana accessories to a person who is 21 years of age or older . . . ." See Mass. Gen. Laws. Ch. 94G, § 8. That statute defines "marijuana accessories" as "equipment, products, devices or materials of any kind that are intended or designed for . . . preparing, . . . packaging, repackaging, [or] storing," id. — a definition seemingly broad enough to cover digital scales and baggies, for instance. And speaking of scales, when it comes to medical marijuana — which Massachusetts legalized years ago — the SJC has held that qualifying "patients may need use of a scale to weigh the marijuana they grow, so as to ensure they do not exceed" the amount they're legally permitted to cultivate. See Commonwealth v. Richardson, 94 N.E.3d 819, 835 n.23 (Mass. 2018).

Rounding out the picture, Maine has also legalized recreational marijuana. A Maine law — called "Personal adult use of marijuana and marijuana products" — says that "person[s] 21 years of age or older" can "[u]se, possess or transport marijuana paraphernalia" and "[u]se, possess or transport at any one time up

to 2½ ounces of marijuana . . . ." See Me. Rev. Stat. tit. 28-B, § 1501. The Maine law also lets persons 21 years old or older "[t]ransfer or furnish, without remuneration, to a person 21 years of age or older up to 2½ ounces of marijuana . . . ." Id. New Hampshire and Rhode Island have decriminalized marijuana, eliminating (for the most part) the possibility of jail time for possessing small amounts of marijuana for personal use. See respectively N.H. Rev. Stat. Ann. § 318-B:2-c; R.I. Gen. Laws Ann. § 21-28-4.01. And Maine, New Hampshire, Puerto Rico, and Rhode Island permit marijuana use for medicinal purposes. See respectively Me. Rev. Stat. tit. 22, § 2423-A (Lexis 2018) (effective July 9, 2018); N.H. Rev. Stat. Ann. § 126-X:2; P.R. Laws Ann. tit. 24, § 2623b; R.I. Gen. Laws § 21-28.6-4.

Which gets me to my point. Given these recent legal changes (with more likely on the way), perhaps someday we as a court will have to reconsider whether a factfinder can reasonably infer felonious intent to distribute in part from a defendant's lawful possession — under state law, anyway — of both personal-use marijuana and marijuana-related paraphernalia. But today is not that day.

And having said my piece, I join my colleagues in affirming Oliveira's sentence.