# United States Court of Appeals
## For the First Circuit

No. 18-2170

UNITED STATES OF AMERICA,

Appellee,

v.

JAN EMMANUEL REYES-TORRES,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

---

Before*
Lynch, Circuit Judge,
and Saris,** District Judge.

---

    José Luis Novas Debién, by appointment of the Court, on brief
for appellant.
    Gregory B. Conner, Assistant United States Attorney,
W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-
Almonte, Assistant United States Attorney, Chief, Appellate
Division, on brief for appellee.

---

October 27, 2020

---

---

    * While this case was submitted to a panel that included
Judge Torruella, he did not participate in the issuance of the
panel's opinion. The remaining two panelists therefore issued the
opinion pursuant to 28 U.S.C. § 46(d).

    ** Of the District of Massachusetts, sitting by designation.

**LYNCH**, <u>Circuit Judge</u>.  Jan Emmanuel Reyes-Torres entered a straight plea of guilty in June 2018 to one count of illegal possession of a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) and was sentenced to forty-two months' imprisonment. Challenging his sentence on procedural and substantive grounds, Reyes-Torres argues that the district court inappropriately applied a four-level enhancement to his total offense level for possession of a firearm in connection with another felony of drug possession pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(6).  His primary argument is that possession of a firearm in connection with mere drug possession for personal use is insufficient to apply the enhancement.  He also argues that the government failed to prove that he was engaged in a different felony offense, drug trafficking, as a basis for applying the enhancement.  We hold the sentence is both procedurally and substantively reasonable and affirm.

I.

Around midnight on January 23, 2018, police officers in Caguas, Puerto Rico, were notified of a report of an armed robbery at a nearby Burger King.  The police dispatch stated that there were several armed suspects in a champagne-colored Toyota Corolla. The officers stopped a champagne-colored Toyota Corolla as it was

leaving the Burger King parking lot and found Reyes-Torres alone in the car.[1]

The officers ordered Reyes-Torres to get out of the car. As he did, the officers saw a firearm on the floor of the driver's compartment and several baggies of drugs (later identified as cocaine and crack cocaine) in the driver's side door. The officers asked Reyes-Torres if he had a license for the firearm, but he did not respond. The officers arrested Reyes-Torres for violations of Puerto Rico's firearms law, P.R. Laws Ann. tit. 25, § 458c, and controlled substances law, P.R. Laws Ann. tit. 24, § 2404, which prohibits possession of certain drugs.

The officers' search incident to arrest recovered a cell phone and thirty-one dollars from Reyes-Torres. During a later vehicle search, officers found numerous items inside the car's passenger compartment. They recovered a Glock pistol loaded with thirteen rounds of .40 caliber ammunition and modified to act as a machine gun, as well as three Glock high-capacity magazines loaded with a total of sixty-two rounds of .40 caliber ammunition. They recovered one clear plastic vial containing a white granular substance (which field tested positive for crack cocaine) and three

---

[1] The report of armed robbery was made by a Burger King employee who saw a gun on the floor of Reyes-Torres's car as he was purchasing food at the drive-through window and falsely believed that the restaurant was about to be robbed. Reyes-Torres did not actually rob the restaurant.

- 3 -

clear plastic baggies containing a white powdery substance (which field tested positive for cocaine).  They found a radio scanner, a black and red mask, a flashlight, a holster, and a white glove.  They also found a second cell phone, an ATM card belonging to Reyes-Torres, and an additional $280.  Photographs from one of the cell phones showed various pistols and machine guns and what appeared to be large amounts of narcotics being weighed with an electronic scale and packaged for distribution.[2]

The U.S. Probation Office's Pre-Sentence Report recommended a four-level enhancement to Reyes-Torres's total offense level under U.S.S.G. § 2K2.1(b)(6).  That enhancement applies where the defendant

> used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense . . . .

U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sentencing Comm'n 2018).  The Application Notes explain that the subsection applies

> if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense . . . [and] in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-

---

[2]    Reyes-Torres denies that the photographs found on his cell phone depicted him with the guns or narcotics and alleges that they were sent to him by his friends.

- 4 -

> manufacturing materials, or drug paraphernalia . . . because the presence of the firearm has the potential of facilitating another felony offense . . . .

U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) application note 14(A)-(B) (U.S. Sentencing Comm'n 2018). The Probation Office determined that the enhancement applied because Reyes-Torres used or possessed the firearm or ammunition in connection with "unlawful possession of a controlled substance," which was a felony offense under Puerto Rico law. Applying this enhancement, the Probation Office determined that the Guidelines Sentencing range was thirty-seven to forty-six months' imprisonment.

The Pre-Sentence Report noted Reyes-Torres's history of drug use, in which he admitted to smoking marijuana on a daily basis but denied using or experimenting with any other controlled substances. He had provided a urine sample after being arrested which tested positive only for marijuana, tending to confirm his statement. The Pre-Sentence Report also stated that Reyes-Torres lacked stable employment and was financially supported by his parents.

The defendant filed an objection to the Pre-Sentence Report in which he argued that the four-level enhancement could not be applied to him because "there is not sufficient evidence [of] the weight of the alleged controlled substance in this case for the court to conclude it was during the commission of a felony

level controlled substance offense." He also argued that "no laboratory analysis was conducted on the substance nor was probable cause found by the grand jury" for the alleged drug offense and so the enhancement could not be applied. The defendant did not, at that point, argue that the enhancement under U.S.S.G. § 2K2.1(b)(6) could not apply to mere drug possession offenses or that the government had failed to prove drug trafficking. The Probation Office rejected the defendant's arguments. It reaffirmed that the enhancement applied because "unlawful possession of a controlled substance is a local offense punishable by imprisonment for a term exceeding one year" and the enhancement applied regardless of whether a criminal charge was brought or a conviction obtained.

Both parties filed sentencing memoranda. The defendant's sentencing memorandum argued for a sentence of twenty-four months' imprisonment based off a total offense level which excluded the four-level enhancement. He argued that a lower sentence was appropriate under the 18 U.S.C. § 3553(a) factors because of his personal characteristics, strong family ties, and status as a first-time offender. The defendant's sentencing memorandum discussed his history of marijuana use and need for treatment and again did not refer to any use of cocaine or crack cocaine. The sentencing memorandum stated that he possessed the machine gun only "because of a vague notion of needing protection." It did not argue that the drugs found in the defendant's car were

solely for his personal consumption, that the sentencing enhancement could not be applied based on his mere possession for personal consumption, or that the government had failed to show evidence of drug trafficking.

The government's sentencing memorandum included the photographs found on Reyes-Torres's cell phone which showed various guns and evidence of drug distribution. The government argued that the enhancement under U.S.S.G. § 2K2.1(b)(6)(B) applied because possession of any amount of cocaine or cocaine base was a felony under Puerto Rico law and case law from other circuit courts of appeal establishes that the enhancement can be applied where the other felony offense is mere drug possession. The government stated that "the evidence supports the conclusion that the firearm was used in connection with Reyes[-]Torres's felony of possessing cocaine and crack . . . [because] [t]he machinegun . . . had the potential to aid or facilitate (e.g., by protecting) defendant Reyes-Torres's possession of his illegal drugs." In the alternative, the government argued that a sentence of forty-six months was justified as a variance under the 18 U.S.C. § 3553(a) factors, particularly given the dangerous nature and characteristics of the machine gun with numerous rounds and the

need for deterrence in light of Puerto Rico's serious problem with violent gun crime.[3]

In November 2018, the district court issued an order overruling the defendant's objection to the application of the sentencing enhancement. The court described the government's position from its sentencing memorandum as "recognizing that the underlying felony offense in this case is mere possession of controlled substances, and not distribution." But the court did not make a specific factual finding in the order that the felony offense was mere drug possession and not drug distribution.[4] Citing United States v. Carillo-Ayala, 713 F.3d 82, 92 (11th Cir. 2013), the court held that "[b]ecause the machinegun was found in defendant's car and in close proximity to the drugs also located there, it had the potential of facilitating a felony drug offense." (Emphasis added.) It thus found that the enhancement applied under these circumstances. The underlying offense at issue in Carillo-

---

[3] The government did not specifically argue in its sentencing memorandum that the evidence was also sufficient for the district court to find that Reyes-Torres was engaged in drug trafficking. But the government did state that U.S.S.G. § 2K2.1(b)(6)(B) applies "in the case of a drug-trafficking offense in which a firearm is found in close proximity to drugs." See United States v. Paneto, 661 F.3d 709, 717 (1st Cir. 2011). Reyes-Torres does not argue that the government waived the argument that the enhancement should apply on the basis of evidence of drug distribution.

[4] Given this record, it is no surprise that the district court did not make a specific factual finding as to drug distribution.

- 8 -

<u>Ayala</u>, however, was drug distribution and not mere drug possession, <u>see</u> <u>id.</u> at 85-86, and so by citing to that case the district court was not saying which underlying drug offense was the basis for its sentence.[5]

At the sentencing hearing, the defendant renewed his objection to the application of the enhancement under U.S.S.G. § 2K2.1(b)(6) and argued for a sentence at the low end of the Guidelines Sentencing range. Defense counsel specifically argued for the first time that the four-level enhancement is "supposed to be added when you're talking about a drug trafficking offense, . . . that it can't be mere coincidental possession[,] and there must be a logical relation or sequence between the possession of [the] firearm and [the] related drug trafficking offense." He argued that the government had not proven that the machine gun was being used to facilitate a drug-trafficking offense and that the drugs found "were clearly for personal use," even though he referred only to Reyes-Torres's use of marijuana earlier in the

---

[5]    "A firearm found in close proximity to drugs or drug-related items simply 'has' -- without any requirement for additional evidence -- the potential to facilitate the drug offense.    A defendant seeking relief under the safety valve, despite his possession of a weapon found in proximity to drug-related items, will have a difficult task in showing that, even so, there is no connection with the drug offense so the safety valve applies." <u>Carillo-Ayala</u>, 713 F.3d at 92 (emphasis omitted). The district court directly quoted the first sentence from this passage in its order denying Reyes-Torres's objection to the sentencing enhancement.

hearing. Defense counsel stated that "[t]he weapon was possessed for a general sense of protection . . . [and] [i]t had nothing to do with protecting those drugs or [Reyes-Torres] being involved in any kind of drug trafficking enterprise."

The government responded that the nature of the machine gun and ammunition recovered, together with the drugs, mask, and radio scanner, made it clear that the machine gun was not for personal protection. The government also argued that the machine gun and ammunition created an imminent danger to the community which justified a higher sentence for adequate deterrence.[6]

The district court reasoned that the sentencing enhancement was warranted "since the defendant used or possessed the firearm or ammunition in connection with another felony offense, that is, the unlawful possession of controlled substances, as was determined in the Court's separate written

---

[6] The government did not directly argue at the sentencing hearing that the enhancement under U.S.S.G. § 2K2.1(b)(6)(B) was justified because the evidence showed drug trafficking, but it did argue that the machine gun was not for personal protection. Nonetheless, the district court was aware of the drug-trafficking issue because the defendant addressed that issue at the sentencing hearing in response to the government's sentencing memorandum. Cf. United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008) ("In considering objections to a sentence's substantive reasonableness, we examine the district court's contemporaneous oral explanation of the sentence, its near-contemporaneous written statement of reasons, and what fairly can be gleaned by comparing what was argued by the parties or proffered in the [Pre-Sentence Report] with what the sentencing court ultimately did." (citations omitted)).

order."  Having applied the enhancement, the court determined that the applicable Guidelines range was thirty-seven to forty-six months' imprisonment.  After discussing Reyes-Torres's age, employment history, and health, including his "history of daily marijuana use since age 17" and lack of treatment, the court sentenced him to forty-two months' imprisonment.  In doing so, the court stated that it "considered the serious nature of the offense of conviction, the type of weapon that the defendant possessed, that is, a loaded machine gun, . . . his status as [a] first[-time] offender . . . [,] [his] personal characteristics and [the] need to deter him from similar criminal behavior."

The defendant timely appealed.

## II.

Where challenges are to the procedural and substantive reasonableness of a sentence, "[o]ur 'review process is bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable.'"  United States v. Sayer, 916 F.3d 32, 37 (1st Cir. 2019) (quoting United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011)).  "In the sentencing context, we evaluate claims of unreasonableness in light of the totality of the circumstances."  United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013) (citing Gall v. United States, 552 U.S. 38, 51 (2007); see also United States v. Sowers, 136 F.3d 24, 28 (1st

- 11 -

Cir. 1998) (stating that "we are not chained to the lower court's rationale but may affirm on any alternative ground supported by the record" and may "choose to follow a different analytic path").

A.    The Sentence Is Procedurally Reasonable

Reyes-Torres argues that the district court imposed a procedurally unreasonable sentence because it improperly applied the enhancement under U.S.S.G. § 2K2.1(b)(6). He argues that cases where this Court has upheld application of this enhancement have involved evidence of firearm possession in connection with drug trafficking, not mere possession. He argues that here, the government did not put into evidence the drug amount, packaging, or other circumstances which could have supported an inference of drug distribution and it failed to prove that the drugs were meant for anything other than personal consumption.

The government responds that this Court should reach and address the issue of whether the enhancement under U.S.S.G. § 2K2.1(b)(6) applies to firearm possession in connection with mere drug possession for personal consumption. It argues that other circuit courts have held that the enhancement applies under those circumstances. Alternatively, the government argues on appeal that the evidence shows that Reyes-Torres was engaged in drug distribution and that alone provides a basis for applying the enhancement.

In assessing the procedural reasonableness of a sentence, we apply a "multifaceted" abuse of discretion standard in which "we apply clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls." United States v. Nieves-Mercado, 847 F.3d 37, 42 (1st Cir. 2017); see also United States v. Cannon, 589 F.3d 514, 516-17 (1st Cir. 2009). A factual predicate for application of a sentencing enhancement need only be proven by a preponderance of the evidence. Cannon, 589 F.3d at 517. "We must ensure that the district court did not commit any 'significant procedural error' to arrive at a sentence." Sayer, 916 F.3d at 37 (quoting Gall, 552 U.S. at 51). Significant procedural errors include

> failing to calculate (or improperly calculating) the [Guidelines Sentencing Range], treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.

Flores-Machicote, 706 F.3d at 20 (second alteration in original) (quoting Gall, 552 U.S. at 51).

This sentencing appeal is without merit. There was no objection made to the district court's finding of drug possession and so we affirm that finding. We also affirm the district court's finding that "[b]ecause the machinegun was found in defendant's

- 13 -

car and in close proximity to the drugs also located there, it had the potential of facilitating a felony drug offense." That finding is not clearly erroneous under the unanimous view of the case law. See, e.g., United States v. Justice, 679 F.3d 1251, 1255 (10th Cir. 2012) (collecting cases); see also United States v. Swanson, 610 F.3d 1005, 1008 (8th Cir. 2010) ("The gun and PCP were both within [the defendant's] immediate reach and it was permissive for the district court to determine they were purposefully together and not close in proximity as a matter of coincidence."); United States v. Jenkins, 566 F.3d 160, 163 (4th Cir. 2009) ("A firearm can embolden the actor to possess the drugs or provide the actor protection for himself and his drugs, which are likely to be personally valuable even in small amounts.").

On the undisputed facts, Reyes-Torres was also clearly in possession of the machine gun in furtherance of drug trafficking under our case law. The record evidence is plainly sufficient to justify an enhanced sentence for that reason. Cf. Sowers, 136 F.3d at 28.

Several facts in the record significantly undermine Reyes-Torres's contention that the cocaine and crack cocaine were for his personal use, rather than for distribution. Reyes-Torres denied using any drugs except for marijuana and had tested positive only for marijuana after being arrested. The photographs found on Reyes-Torres's cell phone and submitted to the district court

showed an electronic scale and large amounts of what appear to be narcotics packaged for distribution, which further indicate that the drugs found in his car were not for his personal consumption. Nothing in the record supports the defense's contention that the cocaine and crack cocaine were for the defendant's personal consumption or that the machine gun and ammunition were for mere personal protection. This Circuit's case law, described below, also supports this conclusion.

Our decision in Cannon amply supports application of the sentencing enhancement on the basis of evidence of drug distribution. In Cannon, we held that we interpret "the phrase 'in connection with' . . . broadly." 589 F.3d at 517 (quoting United States v. Thompson, 32 F.3d 1, 7 (1st Cir. 1994)); see also United States v. Peterson, 233 F.3d 101, 111 (1st Cir. 2000). In affirming the district court's application of the enhancement under U.S.S.G. § 2K2.1(b)(6), this Court stated that

> the record reflects that [the defendant], no stranger to the drug trade, was arrested with a loaded revolver while traveling in a vehicle in which police found multiple packages of drugs, as well as a substantial amount of cash among the occupants, all of whom indicated they were unemployed . . . [and that] [t]hese circumstantial facts, taken together, were sufficient to permit the district court to reasonably infer under a preponderance standard that . . . the drugs were intended for sale and not personal consumption.

Cannon, 589 F.3d at 517-18.

In arriving at this conclusion, Cannon explained that "the large quantity of cash found on the driver [and passengers] . . . support the inference that the car's occupants were engaged in the sale, rather than casual use, of drugs." Id. at 518. Moreover, Cannon recognized that "[w]e have often held that firearms, too, are probative of an intent to distribute narcotics" and "the district court was not required to turn a blind eye to the logical relationship between the presence of multiple packages of drugs, the loaded firearm, and the large amount of cash in determining whether the drugs found in the [car] were intended for distribution or personal use." Id. Based on "the totality of evidence before the district court," Cannon held "that [the defendant]'s possession of the firearm had the potential to facilitate the offense of distribution -- by emboldening the enterprise, aiding the collection of a drug debt, or in any number of foreseeable ways -- and was therefore 'connect[ed] with' that felony for purposes of the enhancement." Id. at 519 (second alteration in original); see also Peterson, 233 F.3d at 111 (noting that "'the usual case' in which the Guideline applies is one in which the defendant 'had the firearm available to protect his supply of drugs'" (quoting Thompson, 32 F.3d at 8)).

Here, Reyes-Torres was found with a machine gun, dozens of rounds of ammunition, several baggies and a vial of narcotics, and a total of several hundred dollars and two cell phones, even

though he lacked stable employment and was financially supported by his parents. The nature of the firearm found -- a pistol modified to act as a machine gun -- together with the high-capacity magazines, mask, and radio scanner, which could be used to avoid police detection, demonstrate that this gun was not meant merely for personal protection. The drugs seized from Reyes-Torres's car were different than the one he reported using, and he tested positive only for marijuana after being arrested. Although Reyes-Torres does not have a history of drug distribution arrests and convictions like the defendant in Cannon, see 589 F.3d at 518-19, the photographs taken from Reyes-Torres's cell phone show that he was "no stranger to the drug trade." Id. at 517. The totality of the evidence confirms that the machine gun and ammunition had the potential to facilitate the offense of drug distribution which justified application of the enhancement under U.S.S.G. § 2K2.1(b)(6).[7]

B.   The Sentence Is Substantively Reasonable

Reyes-Torres's only challenge to the substantive reasonableness of his sentence is that the district court inappropriately applied the enhancement which resulted in a higher total offense level and Guidelines Sentencing range. We review a

---

[7]   We note that the government has unnecessarily complicated this case by presenting on appeal an obvious argument as to drug trafficking which was not made explicitly to the district court.

preserved challenge to the substantive reasonableness of a sentence under an abuse of discretion standard. United States v. Viloria-Sepúlveda, 921 F.3d 5, 8 (1st Cir. 2019). "A sentence is substantively reasonable so long as the sentencing court has provided a 'plausible sentencing rationale' and reached a 'defensible result.'" Sayer, 916 F.3d at 39 (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

Having found that the district court properly applied the sentencing enhancement, we reject the defendant's challenge to the substantive reasonableness of his sentence, which is predicated on that alleged error. See United States v. Mangual-Rosado, 907 F.3d 107, 111 n.1 (1st Cir. 2018). Furthermore, Reyes-Torres's sentence of forty-two months is within the applicable Guidelines range after the enhancement and so is presumptively reasonable. See United States v. Llanos-Falero, 847 F.3d 29, 36 (1st Cir. 2017). The district court also provided a plausible sentencing rationale based on the seriousness of the offense and the dangerous nature of the weapon involved. The mid-Guideline-range sentence ultimately imposed was a defensible result which balanced the need for deterrence with the personal characteristics of Reyes-Torres, including his status as a first-time offender.

Reyes-Torres's sentence is both procedurally and substantively reasonable.

Affirmed.